14 N.Y.2d 559 (1964)
City of New Rochelle, Appellant,
v.
State of New York, Respondent. (Claim No. 35844.)
Court of Appeals of the State of New York.
Submitted February 17, 1964.
Decided February 27, 1964.
Francis S. Claps and Murray C. Fuerst for appellant.
Louis J. Lefkowitz, Attorney-General (Jean M. Coon and Paxton Blair of counsel), for respondent.
Concur: Chief Judge DESMOND and Judges DYE, FULD, VAN VOORHIS and SCILEPPI. Judge BURKE dissents and votes to reverse in the following opinion. Taking no part: Judge BERGAN.
Judgment affirmed, without costs.
BURKE, J. (dissenting).
Although the Appellate Division was correct in characterizing sewage and drainage as governmental *561 functions, that is not the end of the matter. The fact that this is an appropriation for the Thruway Authority puts it in a different light. The controlling cases mean that where there is taking of governmentally held municipal property by the State for State purposes there is no constitutional compulsion to compensate the municipality. Statutory schemes, however, may differ in each case.
The reasoning, such as it is, behind the governmental-proprietary distinction in the ordinary case is that a municipality holds some property as an agent of the entity that created it, the State, and for purposes proper to the State. Accordingly, it is said, there is no constitutional need for the State to pay its own creature when it retakes such governmentally held property for some other public purpose  it would be paying itself in effect, so the reasoning runs. Here, however, the whole scheme of the Thruway Act is to establish a quasi-public corporation as distinct as possible from the State  especially economically. (Matter of Plumbing Assn. v. New York State Thruway Auth., 5 N Y 2d 420.) It is a separate entity. (Pantess v. Saratoga Springs Auth., 255 App. Div. 426.)
I find it decisive that our statutes provide that the State Treasury shall not bear the cost of Thruway construction and maintenance. Subdivision 2 of section 357 of the Public Authorities Law requires the Thruway Authority to reimburse the State for Thruway expenses incurred by it. The report on public authorities submitted by the Temporary State Commission on the Co-ordination of State Activities (N. Y. Legis. Doc., 1956, No. 46) clearly states the controlling policy: "The desire to find revenue sources other than additional taxes for the financing of capital improvements has been a recurrent reason given for the creation of public authorities in New York State. Local governments are limited by the State Constitution in their power to tax real property, and local government revenues have generally been considered inadequate to meet the increasing costs of services. The State government has such heavy demands upon its own revenue sources that the public authority device is attractive for projects which can be financed through user charges rather than from State appropriations. Revenue bond financing of improvements through public authorities is therefore attractive both financially and politically. The public authority appears to have gained widespread *562 popular support as a means of accomplishing needed improvements without additional taxation.
"The New York State Thruway Authority was created to finance the New York to Buffalo express highway without the need for State appropriations. Originally the Thruway was projected as a free road, but the cost of the improvement, the heavy burden it would place upon State revenues, and the prospect of paying for it through tolls resulted in the passage of the authority act" (pp. 43-44).
If, therefore, all Thruway expenses are to be borne exclusively by the users thereof through the payment of tolls, and not by the State Treasury, it is not very sensible to require this municipality, the State's creature, to bear such cost by the forced donation of property.[*] The rational justification for the governmental-proprietary distinction as a measure of compensability for the taking of municipal property is elusive enough in the ordinary case and it is now removed from our law by legislation (General Municipal Law, § 3). To take it in its last days of life and press it into service against this claimant in the teeth of a statutory scheme so patently out of harmony with its presuppositions is a decision to which I cannot assent. I, therefore, vote to reverse and allow compensation to this municipality from the State, which can then be reimbursed by the Thruway Authority under subdivision 2 of section 357 of the Public Authorities Law
Judgment affirmed.
NOTES
[*] The subject property was originally purchased by appellant's predecessor in title, the Village of New Rochelle, in 1893, and paid for, obviously by the local taxpayers.