**STATE HIGHWAY DEPARTMENT, an agency of the State of Delaware, Plaintiff,**

v.

**Harry B. ROBERTS, Harry H. Lambert ,and Joseph F. Dayton, comprising the Levy Court of New Castle County, Defendants.**

Court of Chancery of Delaware.

New Castle.

Dec. 1, 1965.

full age, shall suffer the maximum punishment prescribed for the offense.

"(e) An accomplice may be prosecuted, tried and convicted without the indictment, trial or conviction of the principal. An acquittal of the principal shall not be a bar to the trial and conviction of an accomplice."

Walter K. Stapleton, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

Stuart B. Young, of Young, Conaway, Stargatt & Taylor, Wilmington, for defendants.

MARVEL, Vice Chancellor:

On September 21, 1964, defendants were restrained from interfering with plaintiff's

proposed relocation as well as replacement of certain sewer lines installed and operated by defendants under public streets in a development known as Eden Park Gardens near Wilmington. The work in question was a necessary corollary to the building of the roadbed of a new interstate highway, the changes required in defendants' sewer system being based on designs prepared by defendants for plaintiff at the latter's expense. Accordingly, there is no dispute concerning the engineering aspects of the project or its adequacy for the area served. However, defendants, who in 1953 established the Eden-Hamilton Park Gardens Sanitary district and thereafter constructed a sewer system which was financed by bonds to be paid by annual assessments against contiguous property owners, objected strenuously and with conviction to what they deemed the arbitrary and allegedly invalid method employed by plaintiff to accomplish the relocation and replacement of existing sewer pipes in the area here involved. And while the line between purely governmental functions of county government and those of a private nature is a narrow one, plaintiff initially conceded that defendants' installation and operation of the sewer system in question is for the private benefit of the inhabitants served and so protected by constitutional guarantees where applicable, 1 Nichols on Eminent Domain (Revised Third Edition) § 2.225(1). Accordingly, the original order entered herein specifically preserved defendants' rights to seek relief for the taking of its alleged property rights in the sewer system to be relocated and replaced, it being defendants' contention that the only manner in which plaintiff could lawfully remove and replace a substantial portion of their existing sewer system is by condemnation at law. The entry of such order followed defendants' refusal to agree to the installation of the redesigned sewer system proposed by plaintiff unless and until the latter had agreed to pay not only for the expense of such relocation but had further agreed to pay defendants for the taking of its alleged property interest therein. Such claim, in addition to constituting a demand for payment for property actually taken, includes a contention that plaintiff should be held liable for the loss of sewer assessment revenue which the Levy Court is being deprived of as a result of the project, there having been a taking by plaintiff of several homes in the district by purchase or condemnation so as to permit installation of the roadbed of the new throughway. Also claimed is the alleged added expense of operating the revised and more elaborate sewer system which plaintiff has caused to be installed. The September 21 order was later converted into a preliminary injunction after the parties had agreed to an arrangement under the terms of which defendants agreed to carry out the job of relocation and replacement with the understanding that plaintiff would pay for the actual cost of such work. However, preserved in the later order was defendants' right to assert their rejection of plaintiff's claimed authority to relocate sewer lines at its own expense free of any obligation to pay additional compensation to defendants, and in their answer defendants have incorporated a counterclaim for a declaratory judgment to the effect that defendants' claimed damages arising out of the so-called relocation effected by plaintiff can be constitutionally accounted for only through condemnation proceedings. Upon entry of the preliminary injunction, the bond given on the entry of the restraining order for the purpose of saving defendants harmless in the event it should be ultimately determined that defendants have been improperly restrained, was continued in force and effect. Plaintiff thereafter moved for judgment on the pleadings and defendants have moved for summary judgment in accordance with the prayers of their answer. This is the Court's opinion on such motions.

■ After argument on the pending motions, the Court raised the question of whether or not defendants' interest in the sewers here in controversy was actually of a governmental rather than of a proprietary

or private nature. Thus, while the matter of government tort liability presents complex problems, it is only that government property which is used in a proprietary capacity which is constitutionally protected against being taken or diverted for public use by the State, 2 Nichols, Eminent Domain (Revised Third Edition) § 5.9, and 18 American Jurisprudence, Eminent Domain, § 170.

In general, efforts of a cooperative nature on the part of the inhabitants of a political subdivision carried out through a political agency but designed for such inhabitants' own benefit and convenience are considered, insofar as the political agency involved is concerned, to be of a proprietary or private nature. On the other hand, functions performed by a political subdivision for the benefit of the public at large and the property therein used to protect the public health and welfare are considered governmental. The latter is therefore not entitled to the benefit of constitutional provisions which prohibit the taking of private property for a public purpose without giving fair compensation in return, 2 Nichols, Eminent Domain (Revised Third Edition) § 5.9. And while it would appear to have been the majority view that the installation and maintenance of a sewer system constituted a proprietary function of government designed to benefit its immediate users in a particular sewer district or other political subdivision, a more liberal, contemporary view would appear to be that matters such as the operation of a sewer line and the collection and disposal of garbage are broadly concerned with the general health and welfare inasmuch as such activities benefit not only the inhabitants of a particular area but the public at large. It has therefore been held that sewage and drainage are governmental functions. See City of New Rochelle v. State of New York, 19 A.D.2d 674, 241 N.Y.S.2d 272, aff'd, 14 N.Y.2d 559, 248 N.Y.S.2d 654, 198

N.E.2d 41. And compare Pruitt v. Dayton, 39 Del.Ch. 537, 168 A.2d 543, in which the Chancellor held that the Levy Court's activities in the field of garbage disposal constitute a governmental rather than a proprietary function for the purpose of determining whether or not such activities were subject to the restrictions of a county zoning law and regulations. He based his holding primarily on a similar conclusion reached in Nehrbas v. Incorporated Village of Lloyd Harbor, 2 N.Y.2d 190, 159 N.Y.S.2d 145, 140 N.E.2d 241, 61 A.L.R.2d 965, which held that the collection of garbage can create a health hazard of a magnitude which justifies governmental action. Significantly, the latter case was cited with approval in City of New Rochelle v. State of New York, supra.

By analogy I conclude here that because of the broad public benefits involved in the Levy Court's installation and operation of the sewer line here in issue, such activities constitute the performance of a governmental rather than a proprietary activity. I therefore find that the property involved not being private in nature is not protected by constitutional guarantees against taking. Accordingly, property of the Levy Court so used having been taken by the State Highway Commission in the course of the latter's carrying out of its own proper governmental functions, no compensation is due defendants for the taking and moving of which it complains other than that provided for in 17 Del.C. § 145.[1]

However, in view of the fact that it has been held in the past in a majority of jurisdictions that the maintenance of a sewer system is a proprietary function, I now turn to the contentions of the parties on the issue before me as originally advanced, namely whether or not defendants are entitled to a declaratory judgment that their claim for damages herein can be constitutionally ac-

---

1. This statute directs that any relocation of sewer lines, etc. owned and/or operated by a governmental body required in highway construction shall be made and the cost thereof paid for by the State Highway Department.

counted for only through condemnation proceedings, it being assumed for the purpose of resolving the parties' respective contentions that defendants' property interest in the property here in issue is analogous to that of a public utility's interest in its pipes, wires and poles.] ⚹ ⚹

Eden Park Gardens is one of the built-up areas through which an interstate route or controlled access road known as FAI–3 is being constructed by plaintiff under authority of Title 23 U.S.C. §' 101 et seq. Such route accordingly qualifies as a project entitled to receive 90% of the cost of its construction from the Federal Government. The construction in question has required the removal of parts of the existing Eden Park Gardens sewer system and the relocation and replacement of such system within the right of way of FAI–3. In fact, the Federal Bureau of Roads, acting under statutory authority, initially refused to approve the letting of a contract for the construction of the project in question until an agreement for such sewer line relocation had been entered into.

Plaintiff contends that by reason of recently enacted sections of the Delaware Code (Title 17 Del.C. § 132(b) (1) and § 145), enacted in response to the reimbursement provisions found in 23 U.S.C. § 123, its obligation to an agency required to relocate sewer pipes or the like in the course of highway construction such as that here involved is merely to bear the expenses of such relocation, the common law on the subject having been amended by the cited statutes so as to relieve an agency in a situation such as the one at bar from the previously imposed common law burden of paying for such relocation itself. Therefore, according to plaintiff, the relocation and replacement here involved constitutes a necessary and proper exercise of the State's police power and is not a taking of property without proper compensation being made. It is accordingly contended that defendants are not entitled to assert claims to alleged property losses which they claim to have sustained as a result of plaintiff's actions.

In their answer defendants agree that prior to the entry of a restraining order in this case the parties had reached an agreement on proper methods and plans for relocating the sewer lines in question but contend that any method of compensating them for their alleged property loss other than as provided for by the law of condemnation would deprive them of rights guaranteed to them by Article 1, Section 8 of the Constitution of the State of Delaware, Del.C. Ann. and by the Fifth Amendment to the Constitution of the United States.

It appears to be well established that the law applicable to the required moving of sewer lines, gas lines, and the like operated by a public utility along or under public streets is that the agency operating such lines must relocate them at its own expense when such action is required in the public interest. In other words, the risk that such relocations may be periodically required because of the public's ever growing need for wider and better streets is one which a utility must always be prepared to assume and pay for, New York City Tunnel Authority v. Consolidated Edison Company, 295 N.Y. 467, 68 N.E.2d 445, and Bell Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission, 139 Pa.Super. 529, 12 A.2d 479. Numerous other cases to like effect are found in Nichols on Eminent Domain, Vol. 2 (Revised Third Edition) § 5.85. See also New Orleans Public Service, Incorporated v. City of New Orleans, 281 U.S. 682, 50 S. Ct. 449, 74 L.Ed. 1115, and New Orleans Gas Light Company v. Drainage Commission of New Orleans, 197 U.S. 453, 25 S. Ct. 471, 49 L.Ed. 831. And while the rule is clear, it is, of course, subject to the limitation that an arbitrary and unreasonable attempted exercise of the police power may be held to be a taking of property without due process of law. No such showing is made here. Furthermore, there is no doubt but that the principle governing relocation of utility pipes and wires applies to situations in which a new roadbed is required as is normally the case in turnpike or

throughway construction, First National Bank of Boston v. Maine Turnpike Authority, 153 Me. 131, 136 A.2d 699. Finally, the fact that the County rather than a private corporation operates the sewer system in question does not affect the application of the common law rule above stated. In fact, as noted above, it is only when it is engaged in activities analogous to those of a utility that a governmental agency can claim the rights and immunities of a private corporation, 1 Nichols on Eminent Domain (Revised Third Edition) § 2.225, and see State v. Marin Municipal Water District (Cal.), 101 P.2d 1112, aff'd 17 Cal.2d 699, 111 P. 2d 651.

 Defendants, while recognizing the general rule relied on by plaintiff, contend that their rights to install and maintain a sewer system under the streets of Eden Park Gardens derive from the developer who originally built such streets and did not result from a governmental grant and that accordingly their alleged property right in the system installed by them is protected by constitutional guarantees. This contention, however, disregards the conceded fact that a plot of the area in controversy was recorded in the Office of the Recorder of Deeds on July 10, 1917, by New York Realty and Construction Company, the developer in question, and that a dedication of streets to public use[2] was thereafter effected by subsequent user notwithstanding the fact that title to the actual roadbeds has never been formally conveyed to the State or County, Attorney General v. Chalfant, 12 Del.Ch. 214, 110 A. 663. Actually, it is conceded by defendants that such dedication has long since been accepted by the public. The affidavit of John I. Cahalan, filed in support of defendants' motion, avers: "That the respective rights of plaintiff and the Levy Court to utilize the streets in Eden Park Gardens have arisen by virtue of the dedication of said streets by a developer by recording the plot

plan with the acceptance thereof through public use or maintenance". It is thus clear that notwithstanding defendants' unsupported argument to the contrary, dedication to the public is the basis of defendants' right to maintain a sewer within the width of the roadbeds in question. In other words, notwithstanding the fact that a private agency rather than a governmental agency originally installed the streets in question, this is not the type of case in which a utility by purchase or by means of eminent domain proceedings has actually acquired a property right in a specific strip of land on which to locate its pipes or wires. Compare Arkansas State Highway Commission v. Arkansas Power & Light Co., 231 Ark. 307, 330 S.W.2d 77. Significantly, defendants have not submitted any evidence in support of their claimed right to maintain a sewer system in the area in question under a purported arrangement with the developer of the area. And while there is no showing that defendants ever applied for or obtained a franchise agreement from plaintiff for the publicly dedicated streets here involved, Eden Park Gardens was constructed in 1917, and it was not until 1935 that the management and control of public roads, then the responsibility of defendants, was taken over by plaintiff, 40 Laws of Delaware, Chap. 107.

 In advancing a motion for summary judgment it is incumbent on the proponent of such a motion to submit uncontroverted facts in support of its right to such a judgment, and here, no facts have been advanced which would establish a franchise arrangement or the like between defendants and the developer of Eden Park Gardens. Finally, there is no basis in fact or law for defendants' contention that only the surface of the streets of Eden Park Gardens has been dedicated to the public for use by it. The public use resulting from dedication includes the right to grade as

2. Statutory dedication in New Castle County apparently dates from July 1, 1931,

Vol. 37, Laws of Delaware, Chapter 88, Section 9.

well as to lay sewers and other conduits, Levi v. Schwartz, 201 Md. 575, 95 A.2d 322.

Defendants also rely heavily on the case of Arkansas State Highway Commission v. Arkansas Power & Light Co., supra, for the broader contention that plaintiff's action is not a proper use of the police power but rather an unconstitutional taking of defendants' property without resort to purchase or condemnation. I have no doubt, however, that while the cited Arkansas case is persuasive insofar as it deals with a utility company's property interest in a specific rural right of way obtained by purchase from the owner of the fee or by prescription, insofar as it treats utility equipment located in a public street as property protected by constitutional guarantees and thereby not subject to relocation under the police power, it is clearly at odds with the vast majority of the cases on the subject. The later Arkansas case relied on, namely Arkansas State Highway Commission v. Arkansas Power & Light Co., 235 Ark. 277, 359 S.W.2d 441, which upheld the utility company's alleged contractual rights in an agreement under which the utility company paid for the right to locate lines along public streets, merely declines to overrule the broad ruling of the earlier case. My conclusion is that the majority of the court in the earlier case has confused the property right of a utility to be permitted fairly to conduct its general business under a valid franchise with its more limited right to use public streets for the laying of its pipes or wires, the latter right being clearly subject to a proper exercise of the police power. And while the case of In re Gillen Place, Borough of Brooklyn, 304 N.Y. 215, 106 N. E.2d 897, upon which defendants also rely, presents a special situation involving the closing of a public street, its rationale runs counter to that of the better reasoned cases on the question of what constitutes a proper exercise of the police power.

Defendants, being a governmental body, are entitled to be reimbursed for the expenses incurred by them in relocating and replacing parts of the sewer system here involved (17 Del.C. § 145). They are, not, however, for the reasons above stated, entitled to have their claim for alleged loss of basic property rights arising out of such relocation and replacement adjudicated in a condemnation proceeding. Defendants' motion for summary judgment will be denied. It follows that plaintiff is entitled to judgment. Treating its motion for judgment on the pleadings as one for summary judgment, it will be granted.

Order on notice.