**NEW CASTLE COUNTY SCHOOL DISTRICT et al., Plaintiffs Below,**

v.

**The STATE of Delaware et al., Defendants Below.**

Supreme Court of Delaware.

Submitted Oct. 21, 1980.

Decided Dec. 18, 1980.

Henry N. Herndon, Jr. (argued) of Morris, James, Hitchens & Williams, Wilmington, for plaintiffs below.

---

* The appropriate provision of the Fifth Amendment to the United States Constitution, made applicable to the State through the Due Process Clause of the Fourteenth Amendment, states: "nor shall private property be taken for public use, without just compensation."

Paul P. Welsh (argued) of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants below.

Before DUFFY, McNEILLY, QUILLEN and HORSEY, JJ. constituting the Court en Banc.

McNEILLY, Justice:

■ Presently before the Court are the following certified questions of law, see Supreme Court Rule 41, brought up from the Court of Chancery:

"The provisions of 62 Del.Laws, Ch. 307 direct the New Castle County School District to execute and deliver a deed, transferring the title to certain real property of substantial value to a state agency, for the nominal sum of $1.00 and without other compensation. Does this statute violate:

(a) The Fifth Amendment to the Constitution of the United States, or

(b) Article I, §§ 7 and/or 8 of the Constitution of the State of Delaware?"

Although the federal and State constitutional questions are stated alternatively, our courts have generally proceeded on the basis that the constitutional guarantees here involved * provide the same degree of protection against governmental takings of property without just compensation. See *Artesian Water Co. v. State, Dept. of Highways & Transportation*, Del.Super., 330 A.2d 432 (1974), *aff'd as modified*, Del. Supr., 330 A.2d 441 (1974); *State Highway Dept. v. Roberts*, Del.Ch., 215 A.2d 250 (1965). Thus, in the context of this case, the federal and the State law questions are essentially one and the same and will be treated as such herein.

■ The parties are in agreement as to the general rule regarding compensation to municipal corporate entities, like the New

Article I, § 7 of the Delaware Constitution provides in part: "nor shall [any person] be deprived of ... property, unless by ... the law of the land."

Article I, § 8 provides in part: "nor shall any man's property be taken or applied to public use ... without compensation being made."

Castle County School District ("School District"), when the State seeks to acquire property nominally held by such entities. Property which is held in a governmental capacity may be taken by the State for public use without payment of compensation therefor; property which is held in a proprietary capacity cannot be taken by the State unless just compensation is paid. This is the majority rule, see 29 A C.J.S. *Eminent Domain* § 130 (1965), 26 Am.Jur.2d *Eminent Domain* §§ 178, 179 (1966), 1 *Nichols On Eminent Domain* § 2.225[1] (rev. 3d ed. 1979), and is followed in Delaware. *State Highway Dept. v. Roberts supra.* The parties disagree, however, as to whether the property here in question was, at the time of the enactment of 62 Del.Laws. c. 307, July 1, 1980, held by the School District in a governmental or a proprietary capacity. If the former characterization is appropriate, the certified questions must be answered in the negative; if the latter is appropriate, the questions must be answered in the affirmative.

Briefly, the essential facts concerning the public ownership of the property in question are as follows. In 1937, the land was acquired by a private individual for the purpose of constructing a school thereon to be donated to the Board of Public Education of Wilmington ("Board"), a predecessor to the present New Castle County Board of Education which is the governing body for the School District. The school was built and in 1938, through the use of a charitable corporation set up exclusively for this purpose, fee simple title to the land and building was transferred to the Board. No public funds were involved in this transaction. Thereafter, the property was used by the Board as a school until 1969, at which time it was leased to the New Castle County Vocational-Technical School District ("Vo-Tech District") for one year also for use as a school. From 1970 to 1978, the property was not used by the Board or leased to others.

Subsequent to the federal district court's decision in the New Castle County school desegregation case, *Evans v. Buchanan*, D.Del., 447 F.Supp. 982 (1978), *aff'd as mod-ified*, 3d Cir., 582 F.2d 750 (1978), *cert. denied*, 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 (1980), *rehearing denied*, —— U.S. ——, 100 S.Ct. 3004, 64 L.Ed.2d 865 (1980), and pursuant to an order of the district court, the Board transferred title to the property by quitclaim deed to the newly created School District for the nominal consideration of one dollar. Shortly thereafter, because the District did not need the property for its own educational purposes, it entered into an informal agreement whereby the Vo-Tech District was permitted to use most of the property for teaching technically oriented courses on a continuing education basis to members of the community. Under this agreement the Vo-Tech District paid the costs of operating the building. The School District also allowed part of the building to be used by other training and social service programs conducted or funded by governmental agencies. The School District charged no rents from these various organizations for their use of the property. Although the statute in question required the School District to transfer the property to the State without the payment of full compensation, the Legislature did provide a special appropriation of $100,000. to the Vo-Tech District to help defray the costs of transferring its programs to other locations. 62 Del.Laws, c. 307, section 2. The School District refused to comply with the statutory mandate and instituted litigation in the Court of Chancery from which the instant certified questions of law arose.

There is no question that the purpose for which the State seeks to acquire the property, *i. e.*, to build a public park, is a public purpose. The only question is whether the property, at the time the statute was enacted, was held by the School District in such a capacity as to entitle it to full compensation from the State. To resolve this issue we accept and rely upon the following statement of the law from 1 *Nichols, supra*, at p. 2–155:

"Over the property which a municipal corporation acquires ... for the performance of the strictly public duties devolved upon it by law, the legislature may exer-

cise a control to the extent of requiring the municipal corporation, *without receiving compensation therefor*, to transfer such property to some other agency of the government to be devoted to similar public uses or to other strictly public purposes." (Emphasis in original, footnote omitted).

There can be no doubt that the property was donated to the Board for a public purpose, *i. e.*, to assist the Board in fulfilling its obligation to provide public educational facilities. The property was so used by the Board for thirty years before it became surplus to the Board's education needs. At the time of the 1978 transfer, the property was also surplus to the School District's needs in fulfilling its public education responsibilities and has remained so ever since. The School District contends this fact requires the conclusion that the property is held by it in a proprietary capacity. We disagree.

■ The School District's argument is faulty on two grounds. First, it fails to recognize the General Assembly's primacy in matters concerning the public schools in this State. See Delaware Constitution, Art. X, § 1. Significantly, the Legislature has exercised this power in relation to real property held by schools districts but no longer needed for school purposes; such property may be sold only pursuant to written authorization of the State. 14 *Del.C.* § 1057(a). Thus, the School District has never had an unqualified right *vis-à-vis* the State to dispose of surplus real property, a crucial incident of privately held property. Secondly, at the time 62 Del.Laws, c. 307 was enacted, the property in question was not simply lying idle. Rather, the School District was allowing the Vo-Tech District and other governmentally sponsored organizations to use the property rent free for various purposes. We find this allowance by the School District to be in the performance of a public duty devolved upon it by law, since 14 *Del.C.* § 1056(e) required the School District to:

"permit the use of property under its jurisdiction free of charge ... whenever the purpose is educational, cultural, civic, political or recreational provided there is no monetary gain to the individuals or organization using such property as a result of such use."

Given these significant and legitimate State-imposed restrictions on the School District's control over the use and disposition of real property nominally held by it, we are compelled to conclude that the property here involved was not held by the School District in a proprietary, as opposed to a governmental capacity. Therefore, so far as concerns the certified questions presented, we hold the statute is constitutional.

CERTIFIED QUESTIONS ANSWERED in the negative.