Fuld, J.
The Village of Lloyd Harbor, having a population of about 1,800 and located a few miles from the business section of the Town of Huntington, is a community of homes. The village zoning ordinance, as amended in 1936, classified all of its land as residential, with the exception of a small area zoned for business. In 1950, after the latter area had been sold for residential use, the ordinance was changed to provide that the entire village be zoned as residential and restricted to single-family dwellings.
In 1953, plaintiffs purchased an eight-acre parcel, within the village, on which they built a house. A year later, the village acquired a two-acre plot. Located thereon, about 450 feet from plaintiffs’ home, is a large Tudor-style barn. In existence for many years, it was long used for the storage and garaging of tractors and other farm equipment. The village plans to remodel the structure into a sort of municipal headquarters to be used (1) to furnish an office for the village clerk, a meeting place for the village trustees, discussion of village affairs and courtroom facilities for the village police justice; (2) to provide a locker room and toilet facilities for highway employees; and (3) to house a police car, two enclosed garbage trucks, a tractor, snow removal equipment and smaller appliances used in connection with the repair and maintenance of roads.
The highway repair equipment is used at most three days a week, the garbage trucks twice a week. The latter leave the barn at a quarter to eight in the morning on those two days, pick up the refuse and take it directly to an incinerator located outside of the village. The trucks are always empty when they start out from the barn and when they return to it, and no garbage is at any time disposed of within the village of Lloyd Harbor. The barn’s outward appearance will not be affected by the increased uses to which it will be put, the record evidence being ample that the building will be attractively landscaped and that its operations will be inconspicuous and unobtrusive.
When plaintiffs learned what was planned, they brought *193 this suit against the village and its trustees to prevent them from using the structure “ in any manner except for a single family dwelling. ’ ’ Although the complaint sets out what plaintiffs have chosen to denominate three causes of action — one for a declaration that the 1950 amendment to the zoning ordinance is unconstitutional and the other two for an injunction — we regard their plaint as single, concluding as we do that its gravamen and gist are contained in the second cause of action, with its recital that the village is violating its zoning ordinance ‘ ‘ as it has existed at all times since its original enactment ’ ’ in April of 1936. Accordingly, our discussion, though directed to that cause of action, is dispositive of the complaint in its entirety.
The court at Special Term dismissed two causes of action, the first and third, and the Appellate Division dismissed the remaining one. Both courts agreed that a municipality could not he prevented from performing a governmental function merely because such performance would violate a zoning ordinance, but they differed in their delineation of the “ governmental ” and the “ proprietary.” The Appellate Division, after finding that on the proof adduced “ neither the structure in question nor the manner in which the village proposes to use it # * constitutes a nuisance in fact ”, went on to decide that all of the proposed uses were governmental and could, therefore, be carried on in a residential zone despite the ordinance’s restrictions.
In the very nature of things, a municipality must have the power to select the site of buildings or other structures for the performance of its governmental duties. Accordingly, it necessarily follows, a village, is not subject to zoning restrictions in the performance of its governmental, as distinguished from its corporate or proprietary, activities. (See, e.g., Village of Larchmont v. Town of Mamaroneck, 239 N. Y. 551, modfg. 208 App. Div. 812; Stiger v. Village of Hewlett Bay Park, 283 App. Div. 827; Sunny Slope Water Co. v. City of Pasadena, 1 Cal. 2d 87, 98; City of Cincinnati v. Wegehoft, 119 Ohio St. 136, 137; 2 Metzenbaum on Law of Zoning [2d ed., 1955], p. 1280; cf. Hewlett v. Town of Hempstead, 3 Misc 2d 945, affd. 1 A D 2d 954, motion for leave to appeal denied 1 N Y 2d 643, 644.) In the Village of Larchmont case (supra, 239 N. Y. 551), for instance, the village had its water supply system in the residential district *194 of the neighboring Town of Mamaroneck and sought to construct a small building near its pump works. Although the town ordinance explicitly prohibited such use in a residential area, the town was enjoined from enforcing it against the village in view of the fact that the building in question was designed for a governmental use.
Once we conclude that a village is free to locate its governmental operations in any district it chooses, we are left with the question whether the uses planned for the village building are of a governmental or proprietary character.
Insofar as the structure may be used as a courtroom, a meeting place for the village trustees or an office for the village clerk, there is no problem; it is conceded that such uses are governmental. However, it is plaintiffs’ contention that the building is to be used only as a garage for police cars and for highway department trucks and equipment employed in the repair of highways and in the collection of garbage, and it is urged that, in carrying out such activities, the village performs a corporate function and acts in a proprietary capacity.
Whether a particular activity involves a governmental function or one proprietary is a matter not always easy of determination. Past decisions, mostly in the field of tort liability (see, e.g., Brush v. Commissioner, 300 U. S. 352, 362; 18 McQuillin on Municipal Corporations [3d ed., 1950], p. 185 et seq.), prove of little value, and no all-embracing formula or definition is possible. Certain functions, such as the maintenance of public schools, of a fire department and of a courthouse, are clearly governmental. And within the same category is the village’s furnishing of a police force (see Matter of Evans v. Berry, 262 N. Y. 61, 68; see, also, 18 McQuillin, op. cit., p. 290), as well as its maintaining and repairing of its roads and highways. (See People v. Grant, 306 N. Y. 258, 260; Stiger v. Village of Hewlett Bay Park, supra, 283 App. Div. 827, 828; Markey v. County of Queens, 154 N. Y. 675, 682-683.) Nor may the disposition of refuse and rubbish be placed in a different classification and treated as nongovernmental. Under present conditions, the continued well-being and health of the community and its inhabitants, as well indeed of those in nearby sections, demand that garbage be removed. The necessity creates the duty, and it is incumbent upon the municipality to assure its *195 collection and disposal. Whatever the view may have been years ago (see, e.g., Oeters v. City of New York, 270 N. Y. 364; O’Brien v. Town of Greenburgh, 239 App. Div. 555, affd. on other grounds 266 N. Y. 582),[1] such an activity must today be stamped a governmental function. (See, e.g., Hewlett v. Town of Hempstead, supra, 3 Misc 2d 945, affd. 1 A D 2d 954, motion for leave to appeal denied 1 N Y 2d 643, 644; Rector, Christ Church v. Town of Eastchester, 197 Misc. 943, 947; Ward Co. v. Street Comrs. of City of Boston, 217 Mass. 381, 384; Kunz v. Titusville, 373 Pa. 528, 532-533; 18 McQuillin, op. cit., p. 267.) And, by the same token, the village may use the barn to store and maintain the trucks and other vehicles employed in performing these functions, and to provide quarters for the workers engaged upon them, despite the fact that the structure is located in a district zoned for residence.
As we have already intimated, even if the 1936 zoning ordinance, with its provision for a business district, were still in force, unaffected by the 1950 amendment, the village would be free to place its governmental operations where it did, in the structure on its two-acre plot. That being so, we do not reach the question, suggested by plaintiff’s allegations, as to whether a municipality may be constitutionally and validly zoned solely for residential purposes. (Cf. Matter of Fox Meadow Estates v. Culley, 233 App. Div. 250, affd. 261 N. Y. 506; Gignoux v. Village of Kings Point, 199 Misc. 485; Valley View Vil. v. Proffett, 221 F. 2d 412.) And since there is no evidence in the record before us of a use amounting to a “ nuisance in fact,” and no question of arbitrary or capricious action on the part of the village trustees, we are not called upon to consider or decide the consequences that would ensue if the situation were different.
In short, then, since the village plans to use the erstwhile barn in connection with the performance of governmental func *196 tions, it may not be prevented from so doing merely because the uses contemplated would violate its own zoning restrictions. The judgment appealed from should be affirmed, with costs.
Conway, Ch. J., Desmond, Dye, Froessel, Van Yoorhis and Burke, JJ., concur.
Judgment affirmed.

. Plaintiffs point to our 1935 affirmance-without-opinion in O’Brien v. Town of Greenburgh (266 N. Y. 582) to support their contention that garbage removal is not a governmental function. Although the Appellate Division there held that the collection and disposal of refuse constituted a corporate or proprietary activity (239 App. Div. 555, 559-560), our records indicate that our affirmance was placed on a different ground, it being expressly noted that “ We do not decide whether the town was acting in a governmental or a corporate capacity.”