CARL E. PRUETT, ROSEMARY S. PRUETT, NORMAN M. JONES, HELEN G. JONES, JAMES W. BLACK, ANNIE C. BLACK, CARL F. KAMMERER, MARY KAMMERER, ROGER T. CHECHE, FRANCES S. CHECHE, LULU P. HUTCHISON, LLANGOLLEN CLUB, INC., a Delaware corporation,

Plaintiffs,

*vs.*

JOSEPH F. DAYTON, G. LESTER CLEAVER, HARRY H. LAMBERT, constituting the Levy Court of New Castle County, LAND-FILL, INC., a Delaware corporation, DOMINICK CANTERA and MARION CANTERA,

Defendants.

*New Castle, March 13, 1961.*

*Vincent A. Theisen* and *Victor F. Battaglia* of Theisen & Lank, Wilmington, for plaintiffs.

*Clarence W. Taylor* of Hastings, Taylor & Willard, Wilmington, for defendant, Levy Court of New Castle County.

*Clement C. Wood* of Allmond & Wood, Wilmington, for defendant, Land-Fill, Inc.

*E. Dickinson Griffenberg, Jr.* of Killoran & VanBrunt, Wilmington, for defendants, Dominick Cantera and Marion Cantera.

SEITZ, Chancellor : The plaintiffs are Llangollen Club and certain residents of Llangollen Estates. They seek a preliminary injunction preventing defendants from continuing the operation of a sanitary land-fill on property adjoining their residential development. The members of the Levy Court are made defendants because, pursuant to statute, they leased the land in question for the use now being made of it. Also, pursuant to statute, the Levy Court entered into a contract with the defendant, Land-Fill, Inc., under which Land-Fill is responsible for the operation (*9 Del.C.* § 2401 et seq., as amended). The other defendants are the owners of the leased property. All defendants resist the motion and this is the decision thereon.

The day before the operation was to commence the plaintiffs sought a restraining order. It was denied on several grounds. See *Pruett v. Dayton, ante* p. 441, 166 *A.2d* 440. Plaintiffs, in effect, seek to have this court reverse its prior determination that the Levy Court is not bound by the zoning code in determining where the land-fill operation should be located. They also assert as a new ground that, as operated, the land-fill project creates a nuisance.

Preliminarily, defendant, Levy Court, says its immunity from tort liability prevents plaintiffs from raising the question as to whether the activity here involved is governmental or proprietary. I find it unnecessary to resolve this argument because of my conclusion herein.

In its prior opinion this court stated that the zoning law applied to the private use of land. Perhaps that conclusion was even broader than the facts of the case required. Consequently, the language should be understood to be limited to a determination that the existing statute and zoning code did not bar the Levy Court from placing the sanitary land-fill operation at its present location. I say this on the basis of the following two legal principles:

1. When exercising a governmental function, a subdivision of government is not subject to its own zoning regulations. *Nehrbas v. Incorporated Village of Lloyd Harbor,* 2 *N.Y.2d* 190, *N.Y.S.2d* 145, 140 *N.E.2d* 241, 61 *A.L.R.2d* 965; 2 *Metzenbaum, Law of Zoning (2nd ed.),* p. 1284-85; 62 *C.J.S. Municipal Corporations* § 226(16) (c).

2. Under the modern view, the disposal of garbage by a governmental subdivision involves a governmental rather than a proprietary activity, at least where zoning is involved. See *Nehrbas v. Incorporated Village of Lloyd Harbor,* above. Compare 18 *McQuillin on Municipal Corps., (3rd ed.),* § 53.46; 63 *C.J.S. Municipal Corporations* § 777b.

Plaintiffs contend that the disposal of garbage involves a proprietary function, citing *City of West Point v. Meadows, Miss.,* 110 *So.2d* 372; *Chardkoff Junk Co. v. City of Tampa,* 102 *Fla.* 501, 135 *So.* 457; *City of Denver v. Porter,* 10 *Cir.,* 126 F. 288; *O'Brien v. Town of Greenburgh,* 266 *N.Y.* 582, 195 *N.E.* 210. Of the cases cited, only *O'Brien v. Town of Greenburgh* involved governmental action in conflict with a zoning regulation. In the recent Nehrbas case, cited above, the N. Y. Court of Appeals stated that although the O'Brien case was affirmed, the court did not then pass on the issue of the binding effect of zoning on a municipal garbage disposal operation. The court went on to hold that the Village was not limited by zoning laws in providing a place for the collection of garbage. The

court noted further that cases involving tort liability of municipalities, are of "little value" in resolving disputes of the present type, viz., garbage disposal facilities versus zoning.

I believe the approach of the court in the Nehrbas case is sound. Clearly, garbage can create a health hazard of a magnitude which justifies governmental action. Compare *Delaware Liquor Store v. Mayor,* 45 *Del.* 461, 75 *A.2d* 272. A governmental sub-division so acting is conferring a benefit which realistically is for the good of the general citizenry.

But plaintiffs correctly point out that the statutory grant of power to the Levy Court is permissive rather than mandatory. They argue from this premise that the exercise of the power must therefore be considered proprietary rather than governmental. I think a permissive versus mandatory formulation is not particularly helpful in determining the class of activity involved. It seems to me that the nature of the activity itself must be controlling. Compare Delaware Liquor v. Mayor, above. So viewed, I think the conclusion herein stated is sound.

Other arguments advanced by plaintiffs with respect to the statutory construction problem are, I believe, correctly disposed of in my prior opinion. Plaintiffs do suggest that the approach here adopted results in an unconstitutional delegation of legislative authority to the Levy Court. I fail to see any constitutional problem because the delegation here involved is quite reasonable in relation to the subject matter and the political subdivision involved. Certainly plaintiffs have no "vested contractual" rights as against the Levy Court arising out of the zoning code. See *Reinbacher v. Conly,* 37 *Del.Ch.* 288, 141 *A.2d* 453.

I therefore conclude that the plaintiffs are not entitled to relief on the basis of a claim that the Levy Court action here attacked violates the zoning code.

I turn now to plaintiffs' contention that the land-fill project, as operated, creates a private nuisance as to these plaintiffs. No jurisdictional question is raised but I do point out that apparently no question of public nuisance is involved.

Have plaintiffs made the requisite showing to entitle them to a preliminary injunction?

 Under the law applicable to private nuisances, plaintiffs must clearly establish the nuisance and the injury must not be trivial or temporary. Compare *Ciconte v. Shockley*, 31 *Del.Ch.* 376, 75 *A.2d* 242. The plaintiffs' burden is even heavier here because the matter arises on a preliminary application. Nor is mere diminution of value of property, without more, sufficient to justify the granting of relief. See *Sellers v. Parvis & Williams, C.C.Del.*, 30 *F.* 164. It is understandable that these plaintiffs want the sanitary land-fill operation located elsewhere. But this court cannot interfere with the Levy Court's exercise of a legislatively granted power to make the selection of a site. Thus, the mere selection of the site does not justify a finding of nuisance. *Nehrbas v. Incorporated Village of Lloyd Harbor*, above.

What are the facts? The land-fill operation is located in a semi-rural area of New Castle County zoned for private residences. The homes of the individual plaintiffs are fairly close to the land-fill site, the closest one being approximately 200 feet away.

The operation commenced November 1, 1960. It is being used for the disposal of garbage collected in the entire county, exclusive of the three largest cities. Part of the site, which comprises about 65 acres, was formerly a land quarry, at the bottom of which there is now a body of water. The whole area is fenced. The Levy Court's contract with Land-Fill, Inc. contains provisions governing the operation of the land-fill.

Present disposal practices consist of dumping garbage down a steep embankment, covering it with a layer of earth and then compacting it with a bulldozer. Each day's operation terminates at or about 6 o'clock in the evening. Defendants claim that little or no garbage is left uncovered. Plaintiffs insist that this land-fill operation is in actuality an open garbage pit.

Plaintiff, Pruett, states in his affidavit, which is based on personal observation of the garbage operation at the scene on a particular day last November, that the attempt to cover the garbage dumped on the

slopes of the embankment was ineffectual; that garbage protrudes from the soil. He also contends that 150-200 feet of open garbage could be seen along the banks of the gravel pit. He says that he was advised by one of the Land-Fill, Inc. operators that it was impossible to compact the garbage on the slopes. He states that refuse was seen floating on top of the artificial lake at the bottom of the old gravel pit. Mr. Pruett further claims that he was aware of noxious and unpleasant odors coming from the uncovered garbage and that insects and other vermin will breed and feed there. He states that Land-Fill, Inc. was violating some of the Levy Court's requirements. Several other residents filed substantially similar affidavits.

In a reply affidavit, plaintiff Pruett, claimed that his contention that garbage is left uncovered at the end of the day is supported by pictorial evidence showing large areas of uncovered garbage still visible on the slopes. Plaintiffs also showed a movie taken last fall on a particular day which supported Pruett's claim regarding floating refuse and uncovered garbage on the slopes.

Affidavits have been filed on behalf of defendants by Mr. John J. Cahalan, Chief Assistant County Engineer, Mr. Richard T. Wilson, a sanitary land-fill specialist of six years experience, and Mr. Edgar R. Harvey, Jr., President of Land-Fill, Inc., conceding that some garbage was left uncovered at the edge of the gravel pit and along the banks and that there was evidence of some odor from this uncovered debris. It is not denied that refuse was left floating atop the water at the bottom of the pit. But it appears that this is a controlled condition which should disappear as the operation continues.

Defendants argue that plaintiffs must show an invasion of their property rights in order to establish their right to relief. They point out that the record is lacking in proof that the plaintiffs' enjoyment of such rights has been impaired. The things of which plaintiffs complain as being in existence were admittedly observed and smelled while standing on the land-fill property. There is nothing in the record showing that the condition can be observed or that any substantial odor problems exists at the plaintiffs' properties. Nor is there anything to show that the operation of this dump has resulted in actually breeding vermin, mosquitoes, flies, lice, or other disease-

bearing insects which may find their way to plaintiffs' properties. This is a fear of the future. Finally, there is no showing that plaintiffs' properties have depreciated in value.

 The record does show that the operation of this land-fill project, though there is conflict as to how much garbage is left un-covered at the end of the day, is satisfactory in most respects and in accordance with established sanitary land-fill practices.

I conclude that plaintiffs have not made a showing which would justify the granting of preliminary relief. Their motion will there-fore be denied. I emphasize that it is to be assumed that the County will constantly take reasonable steps to see that the operation is con-ducted so as to prevent the things of which plaintiffs now only fear.

Present order on notice.