256 N.W.2d 694 (1977)
CITY OF FARGO, CASS COUNTY, North Dakota, a Municipal Corporation, Plaintiff and Appellant,
v.
HARWOOD TOWNSHIP, Harwood Township Board of Supervisors, and Harwood Township Zoning Commission, Defendant and Appellee.
Civ. No. 9312.
Supreme Court of North Dakota.
July 27, 1977.
Rehearing Denied August 19, 1977.
*695 Solberg, Stewart & Boulger, Fargo, for plaintiff and appellant; argued by Wayne O. Solberg, Fargo.
Dosland, Dosland, Nordhougen & Mickelberg, American Bank and Trust Company Building, Moorhead, Minn., Attys. for defendant and appellee; argued by J. P. Dosland, Moorhead, Minn.
SAND, Justice.
We are called upon in this case to determine whether a municipality proposing to locate a sanitary landfill on land outside its city limits is exempt from the zoning regulations of the township in which the property is located. We have concluded that it is not.
This question comes to us on appeal from the Cass County district court, first judicial district, where a declaratory judgment action resulted in judgment for Harwood Township.
In 1973 the City of Fargo purchased approximately 1360 acres of land in Harwood Township outside its city limits. The tract had been owned previously by the Holly Sugar Company, purportedly as the contemplated site for a future sugar beet processing plant. Fargo acquired the land for use as a sanitary landfill. Its existing landfill had only about two years of use remaining.
At the time the land was purchased, Harwood had a zoning ordinance in which all publicly owned property was classified as a public district and which authorized all uses permitted by law except sewage lagoons and public nuisances. During and shortly after Fargo's negotiation and purchase of the property, the Harwood Township board of supervisors re-examined its zoning regulation and ultimately adopted a new ordinance providing for agricultural, residential, commercial, and industrial uses. Landfills were prohibited in all but the industrial zone and then only with a conditional use permit. The land acquired by Fargo was zoned as residential and agricultural under the new ordinance.
The Fargo city commissioners petitioned Harwood Township to reclassify the area in question as industrial and to grant Fargo a conditional use permit. After a hearing, Fargo's petition was denied. Fargo did not appeal from that decision but commenced a declaratory judgment action to determine whether the Harwood Township zoning regulations were applicable to the property in question.
The district court determined that the City of Fargo was not exempt from the township zoning regulations and the City appealed from that judgment.
The City of Fargo argued on appeal that Harwood's zoning regulations ought not prevent it from locating a landfill in an agricultural or residential district because the power of eminent domain gave it a superior right in choice of a site. The property was acquired by purchase rather than condemnation, but Fargo contends that the authority to condemn, even though not exercised, invokes inherent superiority.
The general powers of municipalities are set out in Chapter 40-05, North Dakota Century Code, and in Section 40-05-01(55), it is provided that municipalities have the power to acquire property by purchase, condemnation, and other means within or without the corporate limits for all purposes authorized by law or necessary to the exercise of any power granted. Similarly, home rule cities, like Fargo, have the power under § 40-05.1-06(1) to acquire property *696 within or without the corporate limits by eminent domain if so provided in their charter and implemented through ordinances.
More specific authority relating to waste disposal is found in § 40-34-01, NDCC, which reads:
"Any municipality in this state, either individually or jointly by agreement, may own, acquire, construct, equip, extend, and improve, operate, and maintain, either within or without the corporate limits of the municipality, intercepting sewers, including pumping stations, a plant or plants for the treatment, purification, and disposal in a sanitary manner of the liquid and solid wastes, sewage, and night soil of the municipality, or a plant or system for the disposal of the garbage thereof, and may issue bonds therefor as herein prescribed. Any municipality may acquire by gift, grant, purchase, or condemnation necessary lands therefor, either within or without the corporate limits of the municipality and within or without the state of North Dakota.. . ."
Although these statutes clearly provide for exercise of the power of eminent domain, they do not explicitly authorize immunity from zoning regulations when the power is exercised. Nor do the statutes granting zoning power to townships require that it be superseded by the power of eminent domain exercised by a municipality. Harwood Township derives its zoning power from § 58-03-01, NDCC, which allows it to establish one or more zoning districts "for the purpose of promoting the health, safety, morals, or the general welfare." Such zoning must be accomplished in accordance with a comprehensive plan. We do not find in Chapter 58-03 an exception or exemption of the type that would be applicable to Fargo's action. The relevant statutes do not indicate, therefore, which interest should prevail.
A considerable number of courts have resolved similar conflicts of local governmental authority through use of the "governmental-proprietary function" test, which entitles a governmental entity to immunity from zoning regulations if the property is to be used in furtherance of a governmental, rather than a proprietary function. When the use is merely proprietary, the local entity is subject to the same restrictions as a private corporation. See, e. g., City of Scottsdale v. Municipal Court of Tempe, 90 Ariz. 393, 368 P.2d 637 (1962); Nehrbas v. Incorporated Village of Lloyd Harbor, 2 N.Y.2d 190, 159 N.Y.S.2d 145, 140 N.E.2d 241 (1957); Hewlett v. Hempstead, Sup., 133 N.Y.S.2d 690 (1954).
For several reasons, this test has been increasingly criticized. It is said to be irrelevant because the immunity concept was developed to limit the effect of governmental immunity in tort cases and is inappropriate for resolution of zoning conflict. See, O'Connor v. City of Rockford, 3 Ill.App.3d 548, 279 N.E.2d 356 (1972); Seward County Board of Commissioners v. City of Seward, 242 N.W.2d 849 (Neb.1976); and State ex rel. Askew v. Kopp, 330 S.W.2d 882 (Mo. 1960).
The test has also come under attack for vagueness and difficulty of application, as there are no clear rules to determine when a function is a governmental one. Even some courts using the test concede that the distinction is not an easy one to make. See Nehrbas, supra. The existence of a division of authority as to whether waste disposal facilities are governmental or proprietary illustrates this difficulty.
The City of Fargo acknowledges that the governmental-proprietary-function test is inflexible and outdated and appears to concede that it was properly rejected by the trial court. Moreover, this test is generally not relied upon when a governmental unit seeks exemption from zoning regulations outside its territorial limits rather than from its own zoning ordinances. Fargo argues, however, that it is nevertheless exempt from Harwood's zoning regulations based upon the inherent superiority of the power of eminent domain. Both State ex rel. Askew v. Kopp, supra, and Seward, supra, characterize eminent domain as the superior power and hold this superiority to be independently sufficient to override zoning *697 regulations. In Askew, as in the instant case, the land was not actually acquired through exercise of eminent domain but existence of the right to condemn was considered determinative, not whether it was exercised. The rationale used by most jurisdictions adopting this rule is that a municipality is acting as agent of the State and that zoning powers cannot be allowed to frustrate the absolute power of eminent domain possessed by the State. In City of Des Plaines v. Metropolitan Sanitary District, 48 Ill.2d 11, 268 N.E.2d 428 (1971), the court said that to hold the power of condemnation subject to city zoning ordinances would reduce the entity exercising the power to the status of a private landowner, thus frustrating the purpose of the statute authorizing condemnation. Although protection would be provided against abuse of the eminent domain power, the court stated, it was held to be not subject to zoning restrictions.
We recognize that there is ample authority for such a view but we decline to accept it. Although the power of eminent domain is inherent in the State, a municipal corporation has no such inherent power and can exercise it only when expressly authorized by the Legislature. The power must be conferred upon a municipality expressly or by necessary implication and without such authorization it has no more right than any other corporation to condemn property. Although nearly all jurisdictions have conferred such power on cities, towns, and villages to some extent, the legislative declaration is nevertheless required unless the power of a municipality has an express constitutional basis. 11 McQuillan, Municipal Corporations (3d ed. rev.) § 32.12. See also, 26 Am.Jur.2d Eminent Domain § 2 and § 19.
The zoning power is likewise dependent upon authority delegated from the State, and a municipality has no power to zone in the absence of express or implied statutory or constitutional authority. 82 Am.Jur.2d Zoning and Planning § 7. A forceful dissent in City of Scottsdale, supra, pointed out that both eminent domain and the police power (from which authority to zone is derived) are inherent attributes of sovereign states and may be delegated to political subdivisions. Without a specific grant of authority a city has no implied power to exercise its governmental functions outside the city limits.
It is difficult to understand, therefore, from what source Fargo claims an inherent superiority inasmuch as both the City of Fargo and Harwood Township derive their respective powers from legislative grants through statutes which do not expressly authorize immunity from regulations of the other. The two entities appear to possess relatively coequal authority regarding this dispute.
We decline, as the trial court did, to accept the "inherent superiority" rule for other reasons as well. That rule comes too close to granting absolute immunity to political subdivisions with the right to condemn. Such immunity can undermine the essential purpose of zoning: that is, to rationally coordinate land-use planning to promote orderly development and preservation of property values. A local entity attempting to meet the concerns of growing population and dwindling resources by allocating its land in a systematic manner ought not be frustrated by a doctrine which holds outside governmental units automatically exempt from their ordinances. Taken to its logical conclusion, this kind of automatic exemption could lead to absurd results. One governmental unit could flagrantly violate another's zoning regulations by locating a highly offensive facility in the middle of the other's business district, its residential area, or in fact anywhere it might choose. This sort of unilateral decision on the part of the condemning authority is the antithesis of sound land use planning. It is quite obvious that many of the courts which have granted an "automatic exemption" have in fact looked to the circumstances of the particular case and considered them carefully. See, e. g., Hewlett v. Hempstead, supra; Nehrbas v. Incorporated Village of Lloyd Harbor, supra; Conners v. New York State Association of Retarded *698 Children, Inc., 82 Misc.2d 861, 370 N.Y.S.2d 474 (1975); and O'Connor v. City of Rockford, supra. These cases reflect an effort on the part of the courts to achieve the least invasion or diminution of property rights rather than the conferring of a blanket immunity.
One commentator pointed out in Note, "Governmental Immunity from Local Zoning Authority," 84 Harv.L.Rev. 869 (1971), that
"When eminent domain power automatically immunizes the governmental unit from zoning regulation, there is no institutional incentive to comply with local zoning ordinances and no sanction other than adverse public opinion for irresponsible land use decisions."
The author goes on to suggest that zoning ordinances do not necessarily conflict with the sovereign's right to condemn.
"Reasonable zoning ordinances limit, but do not eliminate, a governmental unit's power to locate its facilities through its eminent domain power."
We find it unnecessary to grant an automatic exemption from local zoning ordinances to intruding political subdivisions authorized to condemn on the basis that their power of eminent domain is "superior." Instead, we agree with the trial court that the "balancing-of-public-interests" test, adopted in Town of Oronoco v. City of Rochester, 293 Minn. 468, 197 N.W.2d 426 (1972), is the more sensible rule. After discussing the general rule of exemption from zoning regulations of authorities possessing the right to condemn, the Minnesota court said:
"However, the trend is to limit such freedom from regulation, a trend which we believe is well within the dictates of the public interest, principally because the pungent realities of urban sprawl and overpopulation have accentuated the need for land-use planning and control that serves as foundation for the exercise of police power in the area of zoning. . .
". . . Therefore, we adopt a balancing-of-public-interests test for the resolution of conflicts which arise between the exercise by governmental agencies of their police power and their right of eminent domain. This is preferable to adherence to a less flexible `general rule' based simply on the form of the opposing parties rather than the substance of their conflict."
This test has also been adopted in Florida. Citing Oronoco, the Florida court, in Orange County v. City of Apopka, 299 So.2d 652 (D.C.A.Fla.1974), said the balancing-of-public-interests test allowed for greater flexibility and fairness and that there was long-standing support for it in the State. The court held that in absence of expressed legislative immunity from zoning, the intruding governmental unit should apply to the local zoning authority for a special exemption or change in zoning, and if dissatisfied with the zoning authority's decision could appeal under Florida law to the circuit court for a trial de novo. The court could then consider all relevant factors, such as public need, the existing land-use scheme, alternative locations for the facility, and detriment to adjoining landowners. If, after all factors were considered, it appeared to the court that the host government was acting unreasonably, the zoning ordinance could be held inapplicable to the proposed improvement.
In the case at bar, the trial court stated in its memorandum opinion, page 7, that:
"In adopting a balancing-of-public-interest test, the court grants neither of these statutes superior right, but instead gives prevailing force to that statute where the more significant public interest lies."
We would add that the court, when balancing the interests, should place the burden of proof upon the governmental unit seeking exemption from the zoning ordinance. This is simply another way of saying that the intruding party must demonstrate affirmatively that the balance of interests is on its side.
The trial court made a number of findings of fact based upon the evidence presented to it at trial. In reviewing those *699 findings, we must apply the standard enunciated in Rule 52(a), North Dakota Rules of Civil Procedure, and uphold them unless found to be clearly erroneous. We have summarized what we believe to be the pertinent findings of the trial court, as follows:
No formal action was taken by the City of Fargo to study or investigate suitable sites or analyze alternative waste disposal methods even though it knew as early as 1970 of the need for a new site and had adequate funds and personnel to conduct such studies;
The North Dakota Health Department was limited in its involvement in investigation for a suitable site, but did give qualified approval, contingent upon adequate precautions being taken against surface water contamination;
Fargo's current landfill operation had been cited at one time as a public nuisance and was conducted in such a manner as to provoke complaints from adjacent landowners, health officials, and the county sanitarian;
The Harwood site was substantially the same as the current site and would differ little in its operation;
Much of the land in Cass County was equally as suitable for a landfill as the location in Harwood Township, and the Harwood tract was not shown in any way to be uniquely suited for a landfill;
Locating a landfill on the proposed site would have an adverse economic and environmental impact on the neighborhood and depress home values in what was a coveted location for residential development;
Inadequate study has been done of the potential flooding problem due to low elevation of the site; and
There was no evidence that denial of use of the Harwood location would frustrate the city's governmental function of garbage disposal.
Our independent review of the record reveals substantial evidence to support the trial court's findings. Of particular importance is the showing made in the record that land surrounding the proposed site did appear to be uniquely suited for residential development because of its proximity to the confluence of the Sheyenne, Red, and Rush Rivers. Land along the river was of higher elevation and out of the flood-plain and was wooded and scenic, in stark contrast to most of Cass County. Evidence indicated it was highly desirable for residential use and that several new housing developments were located there. In addition, testimony was presented that use of the proposed site as a landfill would devalue surrounding land, not only for residential purposes but for agricultural use as well.
Such a result might not be without consequence for Fargo. The City could end up paying a high price for the establishment of its landfill in a growing residential area. We pointed out in Kinnischtzke v. Glen Ullin, 79 N.D. 495, 57 N.W.2d 588 (1953), that whenever an agency of the state damages private property for public use, it must make just compensation to the owner, even when the right of eminent domain is not exercised. Quoting from Donaldson v. City of Bismarck, 71 N.D. 592, 3 N.W.2d 808 (1942), we said,
"The provisions of Section 14 of the Constitution are not restricted to eminent domain proceedings. They are applicable as well where private property has been taken or damaged without the consent of the owner, and where no condemnation proceeding has been brought. It is well settled that in such case the constitutional guarantee may be invoked, and the owner may maintain an action to recover just compensation for the property taken or the damage inflicted."
Were the city to operate the landfill in such a manner as to cause damage to private property, either from inadequate flood protection or blowing trash, or from other causes, it might find itself facing numerous damage claims from private landowners.
Fargo objected to the trial court's admission of evidence relating to operation of its presently existing landfill for lack of relevancy, contending that adverse effects of the new landfill would be significantly diminished *700 by use of a transfer station and covered trucks, safeguards not used at the present landfill. In view of the fact that future operation of the new landfill was largely speculative and that there was evidence that the basic method used at the new landfill would be the same as that used previously, that is, trenching, evidence of past performance was admissible. There was testimony that the current landfill had been cited as a nuisance and that in some cases its operation was not in compliance with local ordinances. Proposed changes in operation would affect the weight of that testimony, not its admissibility.
The record also contained substantial evidence that the City of Fargo never actively searched for a new landfill site. We agree with the trial court that Fargo has not met the burden of proof by a showing of sufficient necessity or adequate study of other alternatives. The record shows the Harwood site to be, at most, an area of moderate suitability for a landfill. We venture to say that a stronger showing of necessity would have been made were Fargo to contemplate locating a landfill near one of its own developing residential areas. As the Florida court commented, in City of Apopka, supra, at 654:
". . . the closer one is to his own bailiwick the greater care he is likely to exert for its well-being. One city is less likely to be scrupulous about the location of its potentially offensive governmental activities in another city than `at home' within its own boundaries."
Several other issues have been raised by the City of Fargo. It contends that the zoning ordinance was not applicable to Fargo's tract because the ordinance was adopted subsequent to Fargo's acquisition of the land. Fargo had expended the money for purchase of the property but had not taken any other steps or commenced construction. A stand of trees was planted on one corner of the property near where the trench was to be located but the proposed location of the trench was later moved to another area.
The general rule is that a landowner who merely hopes or plans to use his property in a certain way at some time in the future has no protection against zoning changes prohibiting such facility. On the other hand, a landowner who has made substantial expenditures in reliance upon existing zoning or otherwise committed himself to his substantial disadvantage before the zoning change may be protected. Jurisdictions differ as to whether actual excavation or construction is required to show substantial reliance or whether planning expense and incurrence of contractual obligations and accumulation of other incidental expenses may add up to substantial reliance. Purchase of land, alone, is seldom a proper matter for consideration unless it was done in reliance upon a building permit already issued for a certain purpose. See, 8 McQuillan, Municipal Corporations (3d ed. rev.) § 25.66; 49 A.L.R.3d 13. We find no error in the trial court's conclusion that the zoning ordinance be held applicable to Fargo's landfill site.
Whether or not the ordinance itself is unreasonable, arbitrary, or discriminatory is, of course, a different question and one that is not properly before us. Fargo did not appeal from the zoning commission's denial of the conditional use permit or amendment, nor contend that the commission's action was arbitrary. For this reason, several of the other issues raised on this appeal are not proper matters for our consideration, including whether the ordinance was deficient on its face, or whether the commissioners acted in an arbitrary or biased manner in denying the conditional use permit. In this appeal from a declaratory judgment action we are asked only to decide whether the Harwood Township zoning ordinance is applicable to Fargo's proposed landfill site, not whether the ordinance itself is legally sufficient.
We find the remaining issues raised by counsel to be without merit.
The judgment of the district court is hereby affirmed.
ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.