# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2025 ND 62

Casey Hoff,                                          Plaintiff and Appellant

v.

City of Burlington,                              Defendant and Appellee

### No. 20240081

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Douglas L. Mattson, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice, in which Justices McEvers and Tufte and Surrogate Judge Nelson joined. District Judge El-Dweek filed a dissent.

Lee M. Grossman (argued) and James E. Nicolai (on brief), Fargo, ND, for plaintiff and appellant.

John A. Warcup, Grand Forks, ND, for defendant and appellee.

**Hoff v. City of Burlington**
**No. 20240081**

**Bahr, Justice.**

[¶1]   Casey Hoff appeals from a judgment entered after the district court denied his claims against the City of Burlington for a writ of mandamus, declaratory judgment, injunction, and inverse condemnation; and after the court granted summary judgment dismissing Hoff's negligence claim against the City. We hold the court did not commit reversible error by denying admission of three exhibits; did not err in denying Hoff a writ of mandamus, declaratory judgment, and injunction and in dismissing his inverse condemnation claim; and did not err by granting summary judgment dismissing Hoff's negligence claim. We affirm.

I

[¶2]   On October 2, 2017, Hoff applied for a building permit from the Burlington city council for an addition to his single-family home, located within the City's extraterritorial jurisdiction. Hoff is a licensed contractor who has ten years of experience, constructed three or four complete builds of houses, and completed less than ten additions to houses. Hoff sought to expand his house to add bedrooms, a living area, and a bathroom and to replace a previous addition to the home with a new addition. Hoff's property is located within the City's floodplain.

[¶3]   On October 2, 2017, before applying for the building permit, Hoff met with the City building inspector, Rod Schwandt, to begin the permit process. Hoff provided Schwandt with two appraisals; the first appraisal reflected the pre-improvement property value of $230,000, and the second appraisal was for a post-improvement property value of $345,000. The appraisals were based on the valuation of the entire parcel, not just the home. Hoff also gave Schwandt a sketch of the proposed addition and an elevation certificate for the original structure. Schwandt filled out the permit application for Hoff based on the information Hoff provided.

[¶4]   Later that day, Hoff met with the City engineer, Patrick Samson, regarding his construction plans. After his review, Samson informed Hoff that, based on

1

Hoff's information, the remodel would not constitute a "substantial improvement" that would trigger additional construction requirements under the City's floodplain ordinances.

[¶5] The building permit application provides for an addition of 1,716 square feet. Hoff's sketch with the application shows the proposed addition was to be partially built around the existing structure. Schwandt testified he calculated the application's 1,716 square foot addition by taking the proposed addition's exterior dimensions at 42'x50' (2,100 sq. ft.) and subtracting the area of the existing structure that extended into the new addition. The building permit application also provides "total costs" of $115,000, which was calculated using the difference in Hoff's appraisals. The application under "Type of Work" has "Enlarge" and "Remodel" marked with an "X," but the blank for "Demolish" was not marked. Hoff signed the application.

[¶6] The City approved Hoff's building permit application at a city council meeting held the same day, October 2, 2017. At that meeting, Hoff appeared before the council and assured the council he would build the addition in compliance with the City's floodplain code. Hoff began construction the next day. After the permit was issued, there was no further contact between Hoff and any City official until later in 2018.

[¶7] About a year later in 2018, Ward County emergency manager Amanda Schooling reviewed Hoff's permit as part of her work keeping the county in compliance with a Community Rating System relating to the National Flood Insurance Program ("NFIP"). After her review, she noticed a problem with Hoff's building permit and contacted the City to see if it had any additional information or an updated building permit. Being informed of no added information or updated permit, Schooling recommended to the City that it issue a cease and desist on Hoff's building to make sure the building complied with the NFIP as well as the Community Rating System. In December 2018, the City informed Hoff of his noncompliance with the City's floodplain ordinances. At that time, Hoff had substantially completed the addition on his home. Based on its determination of noncompliance, the City refused to grant Hoff a certificate of occupancy for the remodeled house.

2

[¶8]   Under the City's floodplain ordinances, "substantial improvement" means "any repair, reconstruction, or improvement of a structure, the cost of which equals or exceeds 50 percent of the market value of the structure . . . before the improvement or repair is started[.]" Burlington Code of Ord. § 18-2601(A). If the improvement on an existing structure equals or exceeds 50 percent of the structure's value, the entire structure must be elevated to a certain level to comply with FEMA and NFIP requirements. *See* Burlington Code of Ord. § 18-2602(IV)(1) ("New construction and substantial improvement of any residential structure shall have the lowest floor, including basement, elevated to at least three feet above the base flood elevation unless granted a residential basement flood proof exception under the National Flood Insurance Program.").

[¶9]   The City subsequently discovered Hoff did not build the addition as contemplated by the permit. Hoff completed a remodel of the existing structure's bathroom that was not disclosed to the City; had demolished and rebuilt a portion of the existing structure; and admitted at trial the 1,932 square footage addition was larger than what was shown in the building permit. Hoff testified the cost of construction was in the range of $150,000 to $160,000, including labor and materials.

[¶10]  At a special meeting in May 2019, the city council determined Hoff's house had been "substantially improved." Because the addition constituted a "substantial improvement," additional construction requirements were mandated under the City's floodplain ordinances. In July 2019, the City sent Hoff a letter to bring his house into compliance, requiring the following actions:

1.   Fill in the basement (or convert the basement to a crawl space) of the existing structure unless the existing structure can be structurally disconnected from the new addition. Mr. Hoff submitted to the City as a part of his building permit application that he was going to fill in the basement.
2.   Elevate, as necessary, the finished floor to be at least 1 foot above the base flood elevation. This applies to both the existing structure and the new addition unless the existing structure can be structurally disconnected from the new addition.

3

3. Provide an elevation certificate for the structure after all work has been completed. This will be provided by the City through a licensed surveyor at the City's expense if Mr. Hoff allows the licensed surveyor on his property.

The letter stated the City would allow Hoff 120 days to bring his house into compliance. The letter further stated that if Hoff is not in compliance with the City's floodplain ordinances within 120 days, "he may be fined $1,500.00 per day and may be sentenced to 30 days in jail for each day he is not in compliance in accordance with Burlington City Ordinance § 123.3." Hoff did not complete any of the City's demands.

[¶11] In September 2019, Hoff sued the City asserting claims for a writ of mandamus, declaratory judgment, injunction, and inverse condemnation. He later amended his complaint to include a negligence claim. Hoff asserted his claims arose after the City issued him a "faulty" building permit in October 2017. Hoff claimed the City should be liable for an erroneous calculation of "substantial improvement" in the City's building permit process.

[¶12] The district court entered an order bifurcating Hoff's claims for trial. In October 2022, the court held a bench trial on Hoff's writ of mandamus, declaratory judgment, injunction, and inverse condemnation claims, reserving for a jury trial his claim for negligence and the issue of damages. In May 2023, the court entered an order denying Hoff's claims for relief tried at the bench trial.

[¶13] In August 2023, the City moved for summary judgment on the remaining negligence claim. Hoff opposed the City's motion. In November 2023, the district court granted the City summary judgment and dismissed Hoff's negligence claim. In December 2023, the court entered an order of dismissal and judgment.

II

[¶14] Hoff argues the district court abused its discretion by excluding three exhibits during the bench trial.

[¶15] "A district court has broad discretion on evidentiary matters, and we will not overturn its admission or exclusion of evidence on appeal unless that

4

discretion has been abused." *Wollan v. Innovis Health, LLC*, 2024 ND 169, ¶ 22, 11 N.W.3d 1 (quoting *Spottie, Inc. v. Baiul-Farina, Ltd.*, 2024 ND 88, ¶ 11, 6 N.W.3d 582). But, under N.D.R.Ev. 103(a), "[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party[.]" *See also* N.D.R.Civ.P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

[¶16] Hoff argues the district court abused its discretion in applying N.D.R.Ev. 407 to exclude admission of exhibits 14, 20, and 24 during the bench trial. He argues Rule 407 does not apply because fault or culpable conduct was not at issue. Rather, he argues he introduced the exhibits to establish the condition of his house, that it needed repairs, and that the City refused to issue a certificate of occupancy for the house.

[¶17] Rule 407, N.D.R.Ev., provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> (a) fault;
> (b) culpable conduct;
> (c) a defect in a product or its design; or
> (d) a need for a warning or instruction.
> The court may admit this evidence for another purpose, such as impeachment or, if disputed, proving ownership, control, or the feasibility of precautionary measures.

[¶18] In his brief, Hoff does not address each exhibit, the objections made, and the district court's ruling. He also does not address how his substantial rights were affected by the district court's exclusion of the exhibits.

[¶19] The City objected to exhibits 14 and 20 on the ground of relevance and under N.D.R.Ev. 407. The City objected to exhibit 24 on grounds of hearsay and relevance and under Rule 407. The district court questioned Hoff about the purpose of exhibit 14. Hoff responded, "Purpose is to provide the Court with an exhibit that shows that Ms. Schooling did contact the City regarding Casey Hoff's property. And that after she had identified the problem with her—" The

5

court ruled, "I can be able to take that offered testimony and that's all. From that standpoint, the objection's sustained." The court twice asked Hoff how exhibit 20 is relevant. Hoff responded the exhibit shows the City identified his property as noncompliant and the rules and regulations the City relied on in making that determination. The City responded there is no dispute on those issues and that witnesses could testify as to those issues if needed. The court sustained the objections, indicating Hoff is "able to ask the witness questions." The court asked Hoff to respond to the relevance and Rule 407 objections to exhibit 24 and then sustained the objections.

[¶20] We need not address whether the district court erred in sustaining the City's objections to exhibits 14, 20, and 24. Hoff has not presented any argument regarding how his substantial rights were affected by the court's exclusion of the exhibits. Moreover, evidence was presented at the trial establishing the condition of Hoff's house, that the City identified Hoff's property as noncompliant, the rules and regulations the City relied on in making its determination the property was noncompliant, and that the City refused to issue Hoff a certificate of occupancy. The district court's findings demonstrate evidence was presented and received on these issues.

[¶21] We conclude Hoff failed to show the district court committed reversible error in excluding exhibits 14, 20, and 24. *Black Elk v. State*, 2023 ND 150, ¶ 12, 994 N.W.2d 394 ("Under N.D.R.Ev. 103, the district court's decision to allow or exclude evidence will not be reversible error unless the party objected to the court's decision and the party's substantial rights were affected.").

III

[¶22] Hoff argues the district court erred in denying his writ of mandamus, declaratory judgment, inverse condemnation, and injunction claims after the bench trial. Our standard of review after a bench trial is well-established:

> In an appeal from a bench trial, the district court's findings of fact are reviewed under the clearly erroneous standard of review, and its conclusions of law are fully reviewable. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if

there is no evidence to support it, or if, after reviewing all of the evidence, we are convinced a mistake has been made. The court's findings are presumptively correct. The district court is the determiner of credibility issues and we will not second-guess the district court on its credibility determinations.

*Meuchel v. Red Trail Energy, LLC*, 2024 ND 44, ¶ 5, 4 N.W.3d 203 (cleaned up).

A

[¶23] Hoff argues the district court erred by denying his petition for a writ of mandamus directing the City to issue a certificate of occupancy to Hoff for his house. The court denied Hoff's petition for a writ of mandamus because it concluded Hoff failed to show he has a "clear legal right" to require the City to issue a certificate of occupancy.

[¶24] Section 32-34-01, N.D.C.C., provides a district court with authority to issue a writ of mandamus:

> The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party is precluded unlawfully by such inferior tribunal, corporation, board, or person.

*See also* N.D. Const. art. VI, § 8 ("The district court shall have authority to issue such writs as are necessary to the proper exercise of its jurisdiction."). "A petitioner for a writ of mandamus must show a clear legal right to performance of the act sought to be compelled and must establish no plain, speedy, and adequate remedy exists in the ordinary course of law." *Nordquist v. Alonge*, 2024 ND 157, ¶ 10, 10 N.W.3d 578 (quoting *Burgum v. Jaeger*, 2020 ND 251, ¶ 10, 951 N.W.2d 380). "To be enforceable by mandamus, the law must require an act to be done; mandamus cannot compel an official's discretionary actions." *Id.* (quoting *Berg v. Jaeger*, 2020 ND 178, ¶ 9, 948 N.W.2d 4).

7

[¶25] Whether to issue a writ of mandamus is left to the district court's sound discretion. *Nordquist*, 2024 ND 157, ¶ 10. We will not reverse a court's denial of a writ of mandamus unless the court abused its discretion. *Id.* "A district court abuses its discretion if its decision is arbitrary, capricious, or unreasonable, if it misapplies or misinterprets the law, or if it is not the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation." *Eichhorn v. Waldo Twp. Bd. of Supervisors*, 2006 ND 214, ¶ 20, 723 N.W.2d 112.

[¶26] Hoff argues the City must issue a certificate of occupancy when a homeowner complies with the building permit. He contends the City "changed the rules of the game" after approving his building permit application. Hoff asserts the City improperly changed its determination his proposed addition was not a substantial improvement after he was about "95% done with construction," declaring his addition a "substantial improvement" to the existing structure and requiring actions to be taken to comply with the City's floodplain ordinances.

[¶27] The judiciary's role in reviewing a municipality's discretion applying its ordinances is limited by separation of powers. *GO Comm. ex rel. Hale v. City of Minot*, 2005 ND 136, ¶ 8, 701 N.W.2d 865 (citations omitted). Courts will not substitute their judgment for that of the municipality's governing body in applying ordinances unless an abuse of discretion is clearly shown. *Id.* "Leaving the manner and means of exercising municipal powers to the discretion of municipal authorities implies a range of reasonableness within which a municipality's exercise of discretion will not be interfered with or upset by the judiciary." *Id.* (quoting *Haugland v. City of Bismarck*, 429 N.W.2d 449, 454 (N.D. 1988)).

[¶28] The district court found credible evidence established Hoff's home remodel constitutes a substantial improvement and is out of compliance with the City's floodplain ordinances. The court found Hoff testified the construction cost was in the range of $150,000 to $160,000, including labor and materials, and the pre-construction property appraisal valued his *entire* property at $230,000, not just the structure as required under the City's substantial improvement definition. Based on those facts, the court found, even using the entire property

8

value and not just the value of the structure, the remodel constituted a substantial improvement. The court further found Hoff remodeled a bathroom that was not included in the valuations, and that Hoff admitted he did not adhere to the City's floodplain ordinances and his home is out of compliance with the ordinances. Concluding Hoff failed to show a clear legal right to the City issuing him a certificate of occupancy, the court denied Hoff's request for a writ of mandamus.

[¶29] We conclude the district court's findings of fact are supported by evidence and are not induced by an erroneous view of the law. While Hoff argues a homeowner is entitled to a certificate of occupancy when the homeowner complies with the building permit, the court found Hoff did *not* comply with either the building permit or the City's floodplain ordinances in constructing the addition. Hoff admitted he did not adhere to the City's floodplain ordinances and his home is out of compliance with the ordinances. Hoff provided no authority to support his position he has a clear legal right to have the City issue a certificate of occupancy for his remodeled home that is out of compliance with the City's floodplain ordinances.

[¶30] Moreover, the building permit application, which the City approved, requires Hoff to comply with all applicable codes and ordinances. The application's acknowledgment that Hoff signed states, in part:

> I hereby acknowledge that I have made this application and that the above information is correct. I agree to comply with all City Ordinances and State Laws regulating building construction. . . . Permittee must comply with all codes and ordinances applicable to the work. Issuance of this permit does not grant any authority to erect, modify or use any structure in violation of any code or ordinance. . . . This permit creates no warranties with regard to construction or code compliance. Any inspection under this permit are for the benefit of the public and not the permit recipient and any inspections do not create a duty to the permit recipient, the owner or to a subsequent purchaser with regard to quality of construction or code compliance.

Hoff admittedly did not comply with all applicable ordinances.

9

[¶31] Hoff cites *City of Fargo, Cass Cnty. v. Harwood Twp.*, 256 N.W.2d 694 (N.D. 1977), to support his position. In *City of Fargo*, the city purchased land in Harwood Township for use as a sanitary landfill, which was permitted by the township's then existing zoning ordinance. *Id.* at 695. However, after the city purchased the land, the township adopted a new ordinance which prohibited the city from using the land as a landfill. *Id.* The city contended the new zoning ordinance was not applicable to the city's tract because the ordinance was adopted after the city's acquisition of the land. *Id.* at 700. This Court explained:

> The general rule is that a landowner who merely hopes or plans to use his property in a certain way at some time in the future has no protection against zoning changes prohibiting such facility. On the other hand, a landowner who has made substantial expenditures in reliance upon existing zoning or otherwise committed himself to his substantial disadvantage before the zoning change may be protected.

*Id.* Because the city "had expended the money for purchase of the property but had not taken any other steps or commenced construction," we affirmed the district court's holding the zoning ordinance applied to the city. *Id.*

[¶32] *City of Fargo* does not support Hoff's position. Here, the City did not change zoning or an ordinance. Rather, Hoff did not adhere to the City's existing floodplain ordinances and remodeled his home so it did not comply with the existing ordinances. Hoff's residence was in the flood zone when he applied for the building permit. And the City did not change any applicable ordinances after Hoff applied for the permit. As noted by the district court, "As an experienced contractor, Hoff knew he was conducting a remodel within the floodplain of Burlington, and was required to abide by said ordinances. This is evidenced by the portion of the building permit that states: 'Flood Elevation Certificate required? Yes.'"

[¶33] Hoff did not establish a clear legal right to the City's issuance of a certificate of occupancy for his remodeled home that is out of compliance with the City's floodplain ordinances. The district court's decision is not arbitrary, capricious, or unreasonable, the court did not misapply or misinterpret the law,

10

and the court's decision is the product of a rational mental process. We conclude the court did not abuse its discretion in denying Hoff a writ of mandamus.

B

[¶34] In his complaint, Hoff requested declaratory judgment he constructed the addition in accordance with the building permit and the building code, he is entitled to a certificate of occupancy for the addition, and he is not and will not be guilty of a criminal offense in relation to his residence or the addition. The district court denied Hoff's requests for declaratory judgment. On appeal, Hoff argues the court erred when it failed to issue a declaratory judgment declaring the addition was constructed in accordance with the City's ordinances.

[¶35] Under N.D.C.C. § 32-23-01, "[a] court of record within its jurisdiction shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." We review declaratory judgments under the same standards as other cases. N.D.C.C. § 32-23-07; *Denault v. State*, 2017 ND 167, ¶ 6, 898 N.W.2d 452. The purpose of declaratory relief is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be construed and administered liberally." N.D.C.C. § 32-23-12; *see also* N.D.R.Civ.P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."). A district court's decision whether to exercise its discretion to grant or deny declaratory relief will not be set aside on appeal absent an abuse of discretion. *Kuntz v. State*, 2019 ND 46, ¶ 55, 923 N.W.2d 513.

[¶36] The district court found Hoff did not construct the remodel of his house in accordance with the City's building code. Again, the court's analysis focused on the calculation of the cost of Hoff's remodel in the permit. The court found the building permit, even including the erroneous cost calculation, did not authorize Hoff to construct his remodel outside the "substantial improvement" rule or any other of the City's floodplain ordinances. The court noted, "Hoff admitted in his testimony that he built the remodel as if it were not a 'substantial improvement.'" As previously noted, addressing Hoff's petition for writ of mandamus, the court found Hoff admitted he did not adhere to the City's

11

floodplain ordinances and his home is out of compliance with the ordinances. The court held Hoff failed to comply with the City's ordinances.

[¶37] There is evidence to support the district court's findings Hoff failed to establish that he complied with the City's ordinances, the court's findings were not induced by an erroneous view of the law, and we are not convinced a mistake has been made. We conclude the district court did not abuse its discretion in denying Hoff's claim for a declaratory judgment declaring he constructed the addition in accordance with the City's ordinances.

C

[¶38] In his complaint, Hoff requested the district court issue an injunction prohibiting the City from revoking the building permit and from prosecuting Hoff for constructing or occupying the house and addition. The court denied injunctive relief prohibiting the City from revoking the building permit on the ground the issue is moot, the permit having expired. The court denied injunctive relief prohibiting the City from prosecuting Hoff concluding N.D.C.C. § 32-05-05 prohibits the requested injunction. On appeal, Hoff asserts he "is entitled to an injunction to enjoin the City from demolishing [his] house and prosecuting him for the alleged noncompliance of his house as it relates to the City's ordinances."

[¶39] "Injunctive relief is governed by N.D.R.Civ.P. 65, N.D.C.C. § 32-06-02, and N.D.C.C. ch. 32-05." *State ex rel. City of Marion v. Alber*, 2019 ND 289, ¶ 10, 936 N.W.2d 52. Rule 65, N.D.R.Civ.P., provides the "framework for injunction procedure in North Dakota." N.D.R.Civ.P. 65, Explanatory Note. As the Explanatory Note recognizes, "[g]rounds for granting a permanent injunction are listed in N.D.C.C. § 32-05-04," and "[g]rounds for granting a temporary restraining order or preliminary injunction are listed in N.D.C.C. § 32-06-02." *Id.* "Preventive relief consists in prohibiting a party from doing that which ought not to be done. It is granted by injunction, temporary or final." N.D.C.C. § 32-05-03.

[¶40] A writ of injunction is the "correlative" of a writ of mandamus; "the former restrains action while the latter compels action." *Riemers v. Jaeger*, 2013 ND 30,

¶ 13, 827 N.W.2d 330 (quoting *Ennis v. Dasovick*, 506 N.W.2d 386, 392 (N.D. 1993)). "The granting of injunctive relief is equitable in nature and rests in the sound discretion of the district court, and we will not reverse a court's ruling on injunctive relief unless that discretion has been abused." *Alber*, 2019 ND 289, ¶ 10 (quoting *N.D. Private Investigative & Sec. Bd. v. TigerSwan*, LLC, 2019 ND 219, ¶ 14, 932 N.W.2d 756).

[¶41] Hoff's assertion he "is entitled to an injunction to enjoin the City from demolishing [his] house" is not properly before this Court. Hoff's complaint requested an injunction prohibiting the City from revoking the building permit, not from demolishing his house. And that is the relief the district court addressed and denied. Hoff may not appeal an issue not adequately raised to and addressed by the district court. *Mead v. Hatzenbeller*, 2023 ND 248, ¶ 21, 999 N.W.2d 618 ("[I]ssues not adequately raised in the district court will not be addressed on appeal."); *Albertson v. Albertson*, 2023 ND 225, ¶ 8, 998 N.W.2d 811 ("The purpose of an appeal is to review the actions of the trial court[.]").

[¶42] Although Hoff's brief before this Court asserts Hoff is entitled to an injunction enjoining the City from "prosecuting him for the alleged noncompliance of his house as it relates to the City's ordinances," Hoff provides no argument in support of that assertion. Hoff's brief does not cite or discuss N.D.C.C. § 32-05-05, the statute the district court relied on in denying Hoff's request, or provide any authority or argument to support his assertion he is entitled to the requested relief. We conclude Hoff failed to adequately brief this issue and decline to address it. *See* N.D.R.App.P. 28(b)(7); *Hoever v. Wilder*, 2024 ND 58, ¶ 5, 5 N.W.3d 544 (party waives an issue when not providing supporting argument); *Trosen v. Trosen*, 2022 ND 216, ¶ 33, 982 N.W.2d 527 ("We do not consider arguments that are not adequately articulated, supported, and briefed."); *Riemers v. City of Grand Forks*, 2006 ND 224, ¶ 9, 723 N.W.2d 518 ("[A] party waives an issue by not providing supporting argument and, without supportive reasoning or citations to relevant authorities, an argument is without merit.").

## D

[¶43] Hoff argues the City's refusal to issue a certificate of occupancy amounts to an inverse condemnation after he complied with directives from the building inspector, city engineer, and city council. The district court concluded Hoff failed to show that the City's enforcement of its floodplain ordinances rose to the level of a regulatory taking such that an inverse condemnation has occurred. Hoff's arguments on appeal are limited to applying our state constitution.

[¶44] The North Dakota Constitution states that "[p]rivate property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner[.]" N.D. Const. art. I, § 16. Our state constitutional provision provides "overlapping and broader protection against government interference with property rights" than its federal counterpart because it "was intended to secure to owners, not only the possession of property, but also those rights which render possession valuable." *Nw. Landowners Ass'n v. State*, 2022 ND 150, ¶ 16, 978 N.W.2d 679 (quoting *Grand Forks-Traill Water Users, Inc. v. Hjelle*, 413 N.W.2d 344, 346 (N.D. 1987)). "[T]his Court has looked to both state and federal precedents in construing takings claims under the state constitution, and our cases on inverse condemnation under the state constitution bear some similarities to the federal analysis." *Wild Rice River Ests., Inc. v. City of Fargo*, 2005 ND 193, ¶ 16, 705 N.W.2d 850 (citation omitted).

[¶45] An inverse condemnation action is "a property owner's remedy, exercised when a public entity has taken or damaged the owner's property for a public use without the public entity's having brought an eminent domain proceeding." *Lenertz v. City of Minot*, 2019 ND 53, ¶ 10, 923 N.W.2d 479 (quoting *Bala v. State*, 2010 ND 164, ¶ 8, 787 N.W.2d 761). "To establish an inverse condemnation claim, a property owner must prove a public entity took or damaged the owner's property for a public use and the public use was the proximate cause of the taking or damages." *Id.* (quoting *Bala*, ¶ 8).

[¶46] "There are two categories of regulatory action considered per se takings: physical takings and total regulatory takings." *Liberty Petroleum Corp. v. N.D.*

*Indus. Comm'n*, 2024 ND 183, ¶ 17, 11 N.W.3d 851 (quoting *Wilkinson v. Bd. of Univ. & Sch. Lands*, 2022 ND 183, ¶ 25, 981 N.W.2d 853). A physical taking occurs when the government requires an owner to suffer a permanent physical invasion of the owner's property. *Id.* A total regulatory taking occurs "when regulations completely deprive an owner of all economically beneficial use" of an owner's property. *Id.* (quoting *Wilkinson*, ¶ 25). "For total regulatory takings, the 'complete elimination of a property's value is the determinative factor . . . because the total deprivation of beneficial use is, from the landowner's point of view, the equivalent of a physical appropriation.'" *Wilkinson*, ¶ 25 (quoting *Wild Rice River*, 2005 ND 193, ¶ 13); *see also Wild Rice River*, ¶ 17 ("Governmental regulation constitutes a taking for public use only when it deprives the owner of all or substantially all reasonable uses of the property." (quoting *Braunagel v. City of Devils Lake*, 2001 ND 118, ¶ 16, 629 N.W.2d 567)).

[¶47] Further, this Court has adopted the "parcel-as-a-whole rule," stating the proposition that "[i]n determining whether a restriction constitutes a taking, courts look to the effect of the restriction on the parcel of land as a whole, rather than to the effect on individual interests in the land." *In re 2015 Application for Permit to Enter Land for Surveys & Examination Associated with a Proposed N.D. Diversion & Associated Structures*, 2016 ND 165, ¶ 13, 883 N.W.2d 844 (quoting *Wild Rice River*, 2005 ND 193, ¶ 17) (cleaned up); *see also Hjelle*, 413 N.W.2d at 346.

[¶48] Whether there has been a taking of private property for public use is a question of law, fully reviewable on appeal. *Liberty Petroleum*, 2024 ND 183, ¶ 16; *Lenertz*, 2019 ND 53, ¶ 10. We will not set aside a district court's findings of fact on a takings claim unless clearly erroneous under N.D.R.Civ.P. 52(a). *Wild Rice River*, 2005 ND 193, ¶ 10; *Minch v. City of Fargo*, 332 N.W.2d 71, 73 (N.D. 1983). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction a mistake has been made. *Wild Rice River*, ¶ 10.

[¶49] Hoff argues the district court erred by not concluding a "total regulatory taking" occurred when the City refused to issue the certificate of occupancy. He asserts the City's "retroactive enforcement" of the substantial improvement rule,

after initially determining it did not apply, eliminated his "right to occupy his house." Hoff contends his specific use of the property is for his family's primary residence and the City effectively took away his home by refusing to issue the certificate of occupancy.

[¶50] The district court made findings of fact on Hoff's inverse condemnation claim after the bench trial. The court found the City has a legitimate governmental purpose in floodplain regulation, no evidence showed the floodplain ordinances were passed in bad faith, and no evidence showed the City singled out Hoff's property in enforcing its ordinances. The court found trial testimony established Hoff is a builder, controlled the remodel work on his house, and had ultimate control of his remodel project's actual costs, including where the costs deviated from what had been presented to the City. The court found that the floodplain ordinances could not constitute a "shock or surprise" to Hoff and that the "actual costs" to his "actual remodel project" triggered the "substantial improvement" rule in the City's floodplain ordinances. The court held Hoff failed to show the City's enforcement of its floodplain ordinances rose to the level of a regulatory taking.

[¶51] We conclude the district court's findings support its decision a total regulatory taking has not occurred. In reviewing the effect of the City's refusal to issue a certificate of occupancy on the parcel of land, Hoff has not established he is deprived of "all economically beneficial use" or that the value has been completely eliminated. Even if the City's enforcement of its floodplain ordinances prevents Hoff from occupying his house, that relates to the effect of the regulations on his individual interests in (or desired use of) the land; it does not establish the City's action has completely eliminated the parcel's value.

[¶52] We conclude the district court did not err in dismissing Hoff's inverse condemnation claim.

IV

[¶53] Hoff argues the district court erred in granting summary judgment dismissing his negligence claim. The court concluded the City was entitled to

summary judgment dismissing the negligence claim because, as a matter of law, the City is immune from the claim under N.D.C.C. § 32-12.1-03.

[¶54] Summary judgment under N.D.R.Civ.P. 56 is "a procedural device for promptly resolving a controversy on the merits without a trial if there are no disputed issues of material fact and inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law." *Tangedal v. Mertens*, 2016 ND 170, ¶ 7, 883 N.W.2d 871 (quoting *Davidson v. State*, 2010 ND 68, ¶ 11, 781 N.W.2d 72). We have said:

> In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide.

*Dahms v. Legacy Plumbing, LLC*, 2024 ND 53, ¶ 4, 5 N.W.3d 531 (quoting *Miller v. Nodak Ins. Co.*, 2023 ND 37, ¶ 12, 987 N.W.2d 369). A district court's summary judgment decision is a question of law that we review de novo on the record. *Id.*

A

[¶55] Chapter 32-12.1, N.D.C.C., contains the general statutory framework for governmental liability and immunity. Section 32-12.1-03, N.D.C.C., authorizes liability against political subdivisions for some claims and provides limitations on liability for certain claims. This Court explained N.D.C.C. § 32-12.1-03(1) "provides two separate and independent grounds upon which a political subdivision can be held liable for injuries: (1) a political subdivision can be liable for injuries caused by some condition or use of property in the same manner as a private person, and (2) a political subdivision can be liable for injuries caused

17

by the negligence or wrongful act or omission of an employee acting within the scope of the employee's employment." *Tangedal*, 2016 ND 170, ¶ 10 (quoting *M.M. v. Fargo Pub. Sch. Dist.*, 2010 ND 102, ¶ 9, 783 N.W.2d 806); *see also Fastow v. Burleigh Cnty. Water Res. Dist.*, 415 N.W.2d 505, 509 (N.D. 1987)).

[¶56] Section 32-12.1-03(3), N.D.C.C., provides immunity to a political subdivision or a political subdivision employee for certain identified types of claims. Section 32-12.1-03(3) provides, in relevant part:

> A political subdivision or a political subdivision employee may not be held liable under this chapter for any of the following claims:
>
> . . . .
>
> f.    A claim relating to injury directly or indirectly caused by the performance or nonperformance of a public duty, including:
>
> (1)    Inspecting, licensing, approving, mitigating, warning, abating, or failing to so act regarding compliance with or the violation of any law, rule, regulation, or any condition affecting health or safety.
>
> . . . .
>
> g.    "Public duty" does not include action of the political subdivision or a political subdivision employee under circumstances *in which a special relationship can be established* between the political subdivision and the injured party. *A special relationship is demonstrated if all of the following elements exist*:
>
> (1)    Direct contact between the political subdivision and the injured party.
>
> (2)    An assumption by the political subdivision, by means of promises or actions, of an affirmative duty to act on behalf of the party who allegedly was injured.
>
> (3)    Knowledge on the part of the political subdivision that inaction of the political subdivision could lead to harm.
>
> (4)    The injured party's justifiable reliance on the political subdivision's affirmative undertaking, occurrence of the injury while the injured party was under the direct control of the political subdivision, or the political subdivision action increases the risk of harm.

(Emphasis added.)

18

[¶57] In construing this provision, this Court explained that "the special relationship language was adopted to provide the public with some recourse in cases involving claims for public duty immunity and requires a special relationship to be established before there can be liability for conduct occurring during the performance or nonperformance of a public duty." *Tangedal*, 2016 ND 170, ¶ 22. We further wrote "that if a special relationship is established under N.D.C.C. § 32-12.1-03(3)(f) and (g), a political subdivision may be liable for damages for injuries proximately caused by the negligence or wrongful act or omission of an employee acting within the scope of the employee's employment." *Id.*

[¶58] It is undisputed the City's approval of Hoff's building permit application was a public duty. Thus, for Hoff to have a viable negligence claim against the City, all four elements of a "special relationship" under N.D.C.C. § 32-12.1-03(3)(g) must exist between the City and Hoff. Hoff contends that a "special relationship" under N.D.C.C. § 32-12.1-03(3)(g) existed between the City and Hoff. He further contends the district court improperly made factual findings in granting summary judgment to dismiss his negligence claim. Hence, the issue on appeal is whether Hoff presented evidence creating a genuine issue of material fact on *all* four elements necessary to establish a "special relationship" under N.D.C.C. § 32-12.1-03(3)(g). *Mitzel v. Vogel L. Firm, Ltd.*, 2024 ND 171, ¶ 13, 11 N.W.3d 717 ("Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim." (quoting *Riemers v. Omdahl*, 2004 ND 188, ¶ 4, 687 N.W.2d 445)).

B

[¶59] The district court concluded Hoff did not meet *any* of the four elements necessary to establish a "special relationship" under N.D.C.C. § 32-12.1-03(3)(g). We need not address all four elements of a special relationship because the City is entitled to immunity under N.D.C.C. § 32-12.1-03(3) if any element of a special relationship under N.D.C.C. § 32-12.1-03(3)(g) is not met. We only address the fourth element.

[¶60] The fourth element of a special relationship under N.D.C.C. § 32-12.1-03(3)(g) requires "[t]he injured party's justifiable reliance on the political subdivision's affirmative undertaking[.]" N.D.C.C. § 32-12.1-03(3)(g)(4). Hoff asserts he justifiably relied on the City's affirmative undertaking of approving his building permit application.

[¶61] The district court concluded Hoff failed to establish a genuine issue of material fact that Hoff justifiably relied on the City's approval of his building permit application. The court stated Hoff applied for the building permit based on information Hoff provided and the City approved his building permit based on the information Hoff provided. Regarding "justifiable reliance," the district court stated the City could not have made any "affirmative undertaking" by its approval of the building permit because the City was unaware that the parameters of the building project as presented by Hoff would be changed by Hoff. The court concluded, "Any reliance that Hoff may have had on a statement made by the City would not be justifiable due to Hoff's misrepresentations, and failures to provide critical information in regard [to] his proposed build plan." In other words, Hoff could not rely on any undertaking by the City when he was "aware of the special requirements for construction in a floodplain" and "expanded the scope of his building project in a manner in which was not compliant with the special requirements needed for construction in the floodplain."

[¶62] In addressing the second element of a special relationship under N.D.C.C. § 32-12.1-03(3)(g)(2), the district court noted it is undisputed Hoff's completed project went beyond the scope of the information he provided to Schwandt and Samson during the October 2, 2017 meetings. Moreover, the court explained, Hoff admitted the City did not tell him to build the addition in a manner that would not comply with the City's floodplain ordinances, where to build the addition, or to construct it in a manner that was inconsistent with the building permit. It is also undisputed the completed project was different than what was discussed on October 2, 2017, and included additional improvements the building permit did not take into consideration.

20

[¶63] On our de novo review of the record, we conclude Hoff failed to create a genuine issue of material fact that Hoff justifiably relied on the City's action during the building permit application process. The undisputed evidence establishes Hoff had no direct contact with the City throughout the construction of his project; there was no contact between Hoff and the City about reconstruction, remodeling, demolition of the portion of the existing structure, and the increase in size of the proposed addition; and the City only found out about a bathroom remodel in the existing structure after it was done. Although he argues a permit was not required for the bathroom remodel at the time, Hoff nevertheless presented no evidence the City was aware of the entire scope of his addition and remodel on October 2, 2017.

[¶64] It is also undisputed the final project's construction ultimately went beyond what was discussed with the City's building inspector and engineer and what was presented to the City council on October 2, 2017. Moreover, as the district court concluded, Hoff could not justifiably rely on any statements the City made based on the information Hoff provided in the building permit process "because the information that was provided by Hoff to the City regarding the construction was inaccurate, incomplete, and misrepresented."

[¶65] Although not discussed by the district court under this element of a special relationship, the building permit application Hoff signed specifically states, "Permittee must comply with all codes and ordinances applicable to the work"; "Issuance of this permit does not grant any authority to erect, modify or use any structure in violation of any code or ordinance"; and that the "permit creates no warranties with regard to construction or code compliance." In the City's meeting minutes from October 2, 2017, the record reflects Hoff assured the council his addition "would be built to flood code." Based on the acknowledgement language and Hoff's verbal assurance, Hoff could not justifiably rely on the City's approval of the permit to mean he would be granted a certificate of occupancy for his addition when the addition did not comply with all applicable ordinances.

[¶66] We conclude the district court did not err in granting summary judgment on Hoff's negligence claim. Hoff failed to establish a genuine issue of material

21

fact that he and the City had a "special relationship" under N.D.C.C. § 32-12.1-03(3)(g), meaning the City is immune from Hoff's negligence claim under N.D.C.C. § 32-12.1-03(3)(f).

V

[¶67] The dissent suggests this matter should be remanded so the district court can consider a claim of estoppel. The dissent suggests this despite Hoff not pleading estoppel in either his complaint or amended complaint. Significantly, Hoff also did not argue estoppel in response to the City's motion for summary judgment. For this reason, the court's order granting summary judgment in the City's favor does not address estoppel. "It is axiomatic that an issue or contention not raised or considered in the lower court cannot be raised for the first time on appeal from judgment." *Rutherford v. BNSF Ry. Co.*, 2009 ND 88, ¶ 13, 765 N.W.2d 705.

[¶68] Moreover, neither Hoff's initial nor reply brief filed in this Court use the term estoppel, much less argue he brought an estoppel claim against the City or that he presented genuine issues of material facts that he had a viable estoppel claim against the City. Hoff also did not address how he satisfied any of the limited circumstances when estoppel is available against the government. *See Miller v. Walsh Cnty. Water Res. Dist.*, 2012 ND 152, ¶ 28, 819 N.W.2d 526 (stating successfully claiming estoppel against a government entity is not an easy accomplishment and that estoppel against the government is available in limited circumstances); *Johnson v. City of Burlington*, 2020 ND 81, ¶ 22, 942 N.W.2d 816 ("While the doctrine of equitable estoppel is not absolutely barred against the government, it should also not be freely applied against the government."); *City of Minot v. Johnston*, 379 N.W.2d 275, 278 (N.D. 1985) ("Estoppels against the public are little favored."). "Issues not briefed on appeal are waived." *Northstar Ctr., LLC v. Lukenbill Fam. P'ship, LLLP*, 2024 ND 212, ¶ 72, 17 N.W.3d 1; *see also Hoever*, 2024 ND 58, ¶ 5 (explaining a party waives an issue by not providing supporting argument); *Trosen*, 2022 ND 216, ¶ 33 ("We do not consider arguments that are not adequately articulated, supported, and briefed."); *see also* N.D.R.App.P. 28(b)(7)(A) (providing argument in an appellant's brief must

22

contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

[¶69] The dissent contends a remand is necessary for the district court to consider whether the City should be estopped from claiming Hoff's estimate of the renovation was too low, either from conducting improper or no *due diligence*, and from claiming "Hoff, and Hoff alone, was *at fault*" for an inaccurate building permit to value "requiring him to bear all the costs *of such fault*." (Emphasis added.) "Estoppel is ordinarily a question of fact." *Johnson*, 2020 ND 81, ¶ 22 (quoting *Nelson v. Johnson*, 2010 ND 23, ¶ 30, 778 N.W.2d 773). In *Johnson*, ¶ 24, an appeal from a city's denial of a variance, we distinguished the cited estoppel theory cases because they "involve[d] claims against various local government bodies for damages or a declaration of rights," and were the "types of actions [that] would allow a fact finder to determine whether the elements of estoppel have been met."

[¶70] Here, the dissent ignores the district court's factual findings made after a bench trial rejecting Hoff's claims for writ of mandamus, declaratory judgment, inverse condemnation, and injunction. Further, in granting summary judgment on his negligence claim, the court concluded, "[T]he City was unaware the parameters of the building project as presented by Hoff had ultimately changed due to Hoff conducting a partial demolition of the existing structure and renovation of a bathroom than he was approved for pursuant to the building permit." The court continued, "Any reliance that Hoff may have had on a statement made by the City would not be justifiable due to *Hoff's misrepresentations, and failures to provide critical information in regard* [to] *his proposed build plan*." (Emphasis added.) The dissent, in effect, advocates for this Court to remand the case on an unpled estoppel claim to second-guess the district court's findings of fact after a bench trial and conclusions in granting summary judgment.

[¶71] Moreover, we have said the equitable doctrine of estoppel is unavailable to a party who does not come into equity with "clean hands." *See Northstar*, 2024 ND 212, ¶ 67; *Fredericks v. Fredericks*, 2016 ND 234, ¶ 29, 888 N.W.2d 177; *Borth v. Gulf Oil Expl. & Prod. Co.*, 313 N.W.2d 706, 711 (N.D. 1981); *see also* Clean-Hands

23

Doctrine, *Black's Law Dictionary* 318 (12th ed. 2024) ("The principle that a party cannot seek equitable relief or assert an equitable defense if that party has violated an equitable principle, such as good faith. Such a party is described as having 'unclean hands.'"). Even if an estoppel claim had been pled, the court concluded Hoff's "misrepresentations" and "failures to provide critical information" preluded his reliance on the City.

[¶72] As discussed, N.D.C.C. § 32-12.1-03 provides when a political subdivision may be held liable for certain claims, including claims of negligence. *Tangedal*, 2016 ND 170, ¶ 10 (stating, "Section 32-12.1-03, N.D.C.C., generally authorizes liability against political subdivisions for some claims and places limitations on liability for certain claims."). To the extent the dissent suggests an equitable claim of estoppel precluded the district court from dismissing the negligence claim, we merely note that "there is no common law in any case in which the law is declared by the code." N.D.C.C. § 1-01-06. *See Finstad v. Ransom-Sargent Water Users, Inc.*, 2014 ND 146, ¶ 12, 849 N.W.2d 165 (stating it is for the legislature to determine policy, not for the courts, and that statutory enactments take precedence over and govern conflicting common law doctrines).

[¶73] Because Hoff did not raise at the district court, the district court did not decide, and Hoff did not argue on appeal that he has a viable estoppel claim, we decline to address the equitable estoppel claim raised by the dissent.

VI

[¶74] We have considered Hoff's remaining issues and arguments and conclude they are either unnecessary to our decision or are without merit. We affirm the judgment.

[¶75] Jerod E. Tufte, Acting C.J.
    Lisa Fair McEvers
    Douglas A. Bahr
    David W. Nelson, S.J.

[¶76] The Honorable Daniel S. El-Dweek, D.J., and the Honorable David W. Nelson, S.J., sitting in place of Jensen, C.J., and Crothers, J., disqualified.

24

**El-Dweek, District Judge, dissenting.**

[¶77] I believe it is appropriate for the district court to consider whether estoppel against the City of Burlington applies. I would therefore reverse and remand this matter to allow the district court to consider that issue with respect to the district court's denial of a writ of mandamus, declaratory judgment, and injunction, as well as the inverse condemnation claim.

[¶78] It is recognized that, "[u]nder the great weight of authority estoppel must be pleaded." *State Bank of Cooperstown v. Newell*, 212 N.W. 848, 850 (N.D. 1927). "'Nevertheless it is a rule of general application that if the allegations amount to an estoppel it is sufficient, although the estoppel is not pleaded in so many words or specified as such.' 'Mere informality in the pleadings will not deprive the pleader of the benefit of estoppel so long as the facts are sufficiently pleaded.'" *Id.* (citations omitted). This principle has lasted the test of time, as the *Newell* case has been cited as recently as 1986. *See In re Cook*, 63 B.R. 789, 798 (Bankr. D.N.D. 1986) (allegations in a complaint which amount to estoppel are sufficient).

[¶79] This Court has held:

> Estoppel based on a party's declaration, act, or omission, is allowed under N.D.C.C. § 31-11-06, which provides: "[w]hen a party, by that party's own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission." While the doctrine of equitable estoppel is not absolutely barred against the government, it should also not be freely applied against the government. "Estoppel is ordinarily a question of fact."

*Johnson v. City of Burlington*, 2020 ND 81, ¶ 22, 942 N.W.2d 816 (internal citations omitted). In this case, Hoff alleges in the complaint that he applied for a building permit, started and nearly completed construction, complied with the building permit, and asked for a certificate of occupancy to be issued. He also alleges the City denied the issuance of the certificate. These facts sufficiently plead estoppel. The district court ought to have considered estoppel, whether or not it was pleaded in the complaint.

25

[¶80] This Court has upheld the principles of estoppel as it relates to modifications of an ordinance after a conditional use permit has been issued. In *Buegel v. City of Grand Forks*, 475 N.W.2d 133, 134 (N.D. 1991), the Plaintiff sought to build a firing range in Grand Forks. In 1988, the Plaintiff found a site to build the range, with a plan to rent automatic weapons to patrons. *Id.* He bought the site the same year and contacted the City of Grand Forks to get all proper permissions to open the range. *Id.* After the authorizations were secured, the City adopted an ordinance regarding firing ranges. *Id.* The Plaintiff met with numerous city officials after the ordinance was adopted, and the City issued a conditional use permit which regulated types of ammunition, but not types of guns. *Id.* The Plaintiff received permits, sold his house, and began building the gun store and gunsmithing operation. *Id.* In June 1989, a building permit was issued to allow the Plaintiff to build the firing range in the basement, and he purchased automatic weapons to be used on the range. *Id.* He engaged with contractors to build out the range. *Id.* The same month the Plaintiff was issued the building permit, and after newspaper publicity of the proposed business, residents starting voicing concerns about the use of automatic weapons in the city. *Id.* After the outcry by citizens, the City amended the ordinance to prohibit the use of automatic weapons within the city. *Id*. The Plaintiff sued for inverse condemnation and for injunctive relief. *Id*. The district court found that while the City validly asserted its police power in amending the ordinance, it was estopped from refusing compensation for the exercise of that power. *Id*. The Court affirmed the decision. *Id.* at 136.

[¶81] In *Buegel*, the Court recognized that a city is exempt from liability for its exercise of valid police-power regulation. 475 N.W.2d at 134. However, "this court has recognized that 'a landowner who has made substantial expenditures in reliance upon existing zoning or otherwise committed himself to his substantial disadvantage before the zoning change may be protected.'" *Id.* at 135 (quoting *City of Fargo v. Harwood Twp.*, 256 N.W.2d 694, 700 (N.D. 1977)). The court further recognized that while estoppel isn't "applied freely" it should be "applied on a case-by-case basis with a careful weighing of the inequities that would result if the doctrine is *not* applied versus the public interest at stake and the resulting harm to that interest if the doctrine *is* applied." *Id.* (quoting *Blocker*

26

*Drilling Canada, Ltd. v. Conrad*, 354 N.W.2d 912, 920 (N.D. 1984) (emphasis in original)).

[¶82] Both the *Buegel* trial court and this Court found it significant that the Plaintiff would not have built his firing range had he known the City was going to change the ordinance. 475 N.W.2d at 135. Particularly persuasive is this Court's comment that "[w]ere we to reverse the trial court, the entire cost of this course of conduct would fall on Buegel." *Id.* This Court upheld the trial court's decision estopping the City from claiming noncompensation, premised on the City altering the permit through the use of zoning during construction. *Id.* at 136. This Court was persuaded by the fact the Plaintiff expended significant resources by the time the City had changed the ordinance. *Id.*

[¶83] The parallels between *Buegel* and the instant case are numerous. Here, the City of Burlington emphasizes that Hoff violated the terms of the permit by building larger than he had sketched on the permit. It is an unresolved question of fact whether the sketch on the building permit is calling for one part of the existing house to be taken off and a new one put on or whether it was to be constructed as a C-shaped addition around the existing structure. The district court ought to have considered whether Hoff meant to build a C-shaped addition onto the home or meant to tear off one section and add a new section. Furthermore, the building inspector should have inquired about this odd addition if he was confused about the plan. The City's requirement for only a rough sketch without specific details about the addition in a highly regulated floodplain invited error, confusion, and possibly negligence on the City's part. Given the apparently strict federal regulations regarding buildings in this floodplain, the City should have required much more than it did, and it is logical that they should be estopped from claiming non-liability in this instance. Even if the house was not built according to the approved building permit, the increased amount of square footage is a *de minimis* deviation from the permit (1,932 square feet versus 1,716 square feet).

[¶84] Hoff expended significant resources building this house. It was estimated that the house was 95 percent completed before any government official indicated that there was a problem. The City should have been checking the

27

building progress if the building regulations in this area are so strict. Hoff has been unable to make repairs due to hail since the structure has been built, and presumably, has not been able to occupy the building as his home because the City has refused to issue a certificate of occupancy. The district court's decision puts all of the blame for this situation on Hoff. This Court in *Buegel* refused to burden the Plaintiff with all of the cost of the City's regulation. 475 N.W.2d at 135. In this case, the City's nonchalance about the Hoff project should not fall completely on Hoff. Moreover, after "weighing of the inequities that would result if the doctrine is not applied," Hoff is completely deprived of the use of the house due to numerous alleged oversights on the City's part.

[¶85] Further, as a matter of public policy, the majority's holding calls into question the amount of confidence that property owners and builders can have in relying on the representations of city officials. How much confidence can the public have in these representations if they will be ordered to completely dismantle property improvements near completion because the City misunderstood or was mistaken about the scope of a project? How much extra expense will go into constructing new structures or improving aging ones to ensure that a governmental entity really understands the scope of the project and double-checking their work with other governmental authorities that can object to the project? The majority opinion unfortunately disturbs the confidence that citizens have in approvals given by a governmental authority.

[¶86] The City contends the value of the renovation put on the building application is too low, and would be a substantial (versus non-substantial) improvement, which would have triggered different building requirements. The City contends the alleged low valuation should invalidate the permit. However, the number the City uses, which is $140 a square foot, is also low by the building inspector's own admission:

> Q: And that $140—do you know where that number comes from?
> A: That's the number that we've used for a number of years as being the—year, *it is a little conservative*—but being the estimated cost to build a house. That's how we calculate the value of the house.

(Emphasis added.) It was well within the building inspector's discretion to disagree with Hoff's estimation of the improvement if he thought it was too low, particularly in such a highly regulated floodplain.

[¶87] The city engineer also reviewed the permit before the application was sent to the city council for approval. On remand, the district court should consider whether the City should be estopped from claiming Hoff's estimate was too low as they were either satisfied after conducting due diligence in the approval process, or they failed to properly conduct any due diligence at all. Either way, following the holding of *Buegel*, the district court should consider whether the City should be estopped from claiming that Hoff, and Hoff alone, was at fault for an inaccurate building permit value, thus requiring him to bear all the costs of such fault.

[¶88] The City cites *Soderfelt v. City of Drayton*, 59 N.W.2d 502 (N.D. 1953) and *Eck v. City of Bismarck*, 283 N.W.2d 193 (N.D. 1979) for the proposition that the City has no liability for a regulation relating to a government's police power, such as zoning. However, the City fails to analyze the exceptions to this proposition including the "substantial reliance" exception. The "substantial reliance" exception was analyzed in *Buegel*, and the Court upheld the compensability of the City's exercise of police power against a land owner. 475 N.W.2d at 135. In fact, the Court in *Buegel* cites *Eck* for the noncompensability principle before going on to outline the "substantial reliance" exception. *See id.* at 134-35. Like the case here, *Buegel* was an inverse condemnation action, and the Supreme Court opinion does not mention that estoppel was pleaded. In *Buegel*, it appears that it was the district court, and not the Plaintiff, that developed the theory of estoppel: "Buegel sued the City for inverse condemnation and to enjoin the City from enforcing the amended ordinance against him." *Id.* at 134. Similarly, nothing bars this Court from remanding the matter to consider estoppel under the "substantial reliance" exception.

[¶89] The City also argues that the bathroom renovation of the Hoff project exceeds the non-substantial improvement threshold. Hoff relied on the City's zoning ordinance which, at the time, did not require permits to make bathroom improvements. During construction of the addition, the zoning regulation

29

changed and suddenly required a city permit for a bathroom renovation. It is unreasonable to add the value of the bathroom improvements into the total cost of the renovation when these types of repairs were not regulated by the City through the zoning ordinance at the time the building permit was issued.

[¶90] Citizens are owed reliance upon the rules, regulations, and statutes at the time they act or do not act. "We give words their plain, ordinary, and commonly understood meaning, unless they are specifically defined or a contrary intention plainly appears." *Grand Prairie Agric., LLP v. Pelican Twp. Bd. of Supervisors*, 2021 ND 29, ¶ 7, 955 N.W.2d 87; N.D.C.C. § 1-02-02. "[O]rdinary citizens should be able to rely on the plain language of a statute to mean what it says." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).

[¶91] Fundamental fairness requires this Court to remand this case to the district court to consider whether estoppel applies. Citizens are entitled to rely on their government's word. To adopt the majority opinion is to require Hoff to bear the entire cost of the City's blunder, which is a gross violation of trust between a government and its citizens. This Court rightly saw fit to uphold compensation for an owner of a shooting range in *Buegel*. Before this Court is a case of a homeowner-contractor building an addition onto his residence. The City has refused to provide Hoff with a certificate of occupancy the entire time that this litigation has been pending. The City's refusal to provide a certificate of occupancy has deprived him of the use of his home, subjected him to possible civil and criminal sanctions, and has constituted a waste of the time, effort, and materials that he has invested into his property. These efforts, coupled with the City's indifference, entitles Hoff to a review by the district court to consider whether the City should be estopped from changing its position on the validity of the building permit. To do otherwise would be to unduly deprive a man the use of his land for a home.

[¶92] Daniel S. El-Dweek, D.J.